STATE, VILLAGE OF NEW HOPE, v. ERIC DUPLESSIE.

231 N. W. 2d 548.

June 27, 1975—No. 45306.

*C. Paul Jones,* State Public Defender, and *William J. Mauzy,* Assistant Hennepin County Public Defender, for appellant.

418

*Warren Spannaus*, Attorney General, *William J. Corrick*, New Hope City Attorney, and *John W. Wood, Jr.*, Assistant City Attorney, for respondent.

Heard before Rogosheske, Yetka, and Scott, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

Defendant appeals from a judgment of conviction of attempted theft in violation of New Hope Village Code, § 12.01, entered in Hennepin County Municipal Court. We reverse.

Following a plea of not guilty, defendant was tried without a jury. At trial, one Donald Berge testified on behalf of the prosecution and related the following observations:

On the night of February 19, 1974, Berge observed a light blue 1972 Ford automobile with four occupants near a parking lot where several Wonder Bread Bakery trucks were parked. That lot was located in the village of New Hope. Berge further observed two individuals leave the automobile and enter the parking lot and commence to inspect the Wonder Bread vehicles.[1] It was dark at the time and Berge was making his observations from a distance of approximately 200 to 300 feet. Berge then called the New Hope Police Department. Berge stated that the two individuals "took off running" into an adjacent field as a squad car approached the parking lot. Shortly thereafter the police apprehended the two occupants of the 1972 Ford automobile.

The prosecution also called Officer John E. Oberreuter of the New Hope Police Department to testify. Officer Oberreuter testified that he observed the apprehension of defendant and another individual, who were placed in custody while they were walking along a street near the Wonder Bread parking lot.

---

[1] At trial, Berge testified as follows: "They were going from truck to truck; they touched the door and walked away from it, that was all I saw." Berge also testified that he did not observe either of the two individuals open the doors or enter any of the Wonder Bread vehicles.

The two occupants of the 1972 Ford, along with defendant and the other individual, were placed under arrest, taken to the New Hope Police Department, given the Miranda warning, and then were interrogated en masse by Officer Oberreuter.[2]

Over strong and repeated objection of defendant's counsel, Officer Oberreuter was permitted to testify as to certain statements made by the juvenile arrested with defendant during interrogation. This testimony provides the basis of the issues raised on appeal and is as follows:

"BY MR. WOOD [the prosecutor]:

"Q. Officer Oberreuter, what did [the juvenile] say relative to the activities of himself and Mr. Duplessie at about 9:15 p.m.?

"A. [He] indicated that he had, he and Mr. Duplessie had met with the other two young men involved in this, * * * earlier in the evening. They had indicated at this time that they wished a ride to the Wonder Bread Bakery, because they believed that extra bakery goods were left in the trucks and they were, they indicated to [the other juveniles] they were hungry and wished to check the trucks to see if there were any bakery goods left in trucks at this time.

"Q. Was Mr. Duplessie present when the statement was made?

"A. Yes, he was.

"Q. Do you recall any response on the part of Mr. Duplessie?

"A. He seemed to—

"Q. Well, excuse me for interrupting. Do you recall any verbal response on his part?

"A. He nodded his head and laughed.

"MR. MAUZY [defense counsel]: Your Honor, I enter the further objection to this, the defendant's right to remain silent at this time.

---

[2] Defendant was the only adult among the four individuals apprehended. The disposition of the proceedings against the three juveniles is not contained in the record.

420

"THE COURT: Well, that is an observation of his conduct."

The juvenile who made these statements was not called to testify at trial for reasons not of record.

The court found defendant guilty as charged and sentenced him to one year's probation pursuant to Minn. St. 609.135.

The following issues are raised in this appeal:

(1) Was the quoted testimony of Officer Oberreuter admissible under the coconspirator's exception to the hearsay rule?

(2) Was that testimony admissible as an adoptive admission of defendant?

(3) If the admission of the testimony was error, was the error prejudicial so as to mandate a new trial?

■ Defendant first contends that the testimony at issue does not fall within the "coconspirator's" exception to the hearsay rule.

In order for the coconspirator's exception to apply, the declaration must be "made during the pendency of the conspiracy and in furtherance of it." State v. LaJambe, 300 Minn. 539, 540, 219 N. W. 2d 917, 918 (1974).

As this court stated in State v. Tennyson, 212 Minn. 158, 165, 2 N. W. 2d 833, 837 (1942):

"* * * Everything said, written, or done by any conspirator in execution or furtherance of the common purpose of a conspiracy to commit a crime is deemed to be the act of every one of them and is admissible against each."

This exception to the hearsay rule is predicated upon the fact that such statements are an actual part of the criminal conduct. However, when the conspiracy is ended (as by arrest in the instant case), the subsequent declarations of any of the alleged coconspirators are no longer an element of the actual conspiracy, rather those statements, as here, may take the form of a narrative of past events. Thus, such hearsay statements are not "in furtherance" of the alleged conspiracy and are therefore non-

admissible. State v. Tennyson, *supra*; State v. Kahner, 217 Minn. 574, 15 N. W. 2d 105, certiorari denied, 323 U. S. 768, 65 S. Ct. 121, 89 L. ed. 614 (1944) ; State v. Thompson, 273 Minn. 1, 139 N. W. 2d 490, certiorari denied, 385 U. S. 817, 87 S. Ct. 39, 17 L. ed. 2d 56 (1966); Krulewitch v. United States, 336 U. S. 440, 69 S. Ct. 716, 93 L. ed. 790 (1949) ; Grunewald v. United States, 353 U. S. 391, 77 S. Ct. 963, 1 L. ed. 2d 931 (1957).

In the instant case, the object of the alleged conspiracy was the theft of bakery goods from certain trucks. The conspiracy clearly ended when the four suspects were apprehended and arrested by the New Hope police. The declarations which incriminated defendant were made subsequent to that arrest, and, as such, were not made "in furtherance of" the alleged conspiracy,[3] and thus the declarations of the juvenile were not admissible under the coconspirator's exception to the hearsay rule.

■ The prosecution asserts that the testimony of Officer Oberreuter was properly received on the ground that defendant's nodding of his head and his laughing in the face of the juvenile's incriminating statement, was an *adoptive admission.* Defendant, on the other hand, contends that this testimony violated his Fifth Amendment right to remain silent and, also, his Sixth Amendment right to confront his accuser.

In a literal sense, an adoptive admission manifested in an unequivocal manner constitutes a waiver of both the right to remain silent and to be confronted by one's accuser. However, the instant case is an example of an alleged adoptive admission which is *equivocal.* In the face of the juvenile's statement, defendant laughed and nodded his head. At trial, Officer Oberreuter did *not* state whether defendant's head nod was affirmative or negative in character. It is beyond question that, absent that conduct, Officer Oberreuter could not have even testified

[3] See, e.g., Krulewitch v. United States, 336 U. S. 440, 442, 69 S. Ct. 716, 717, 93 L. ed. 790, 793 (1949).

that defendant had been given the Miranda warnings.[4] Nor could Officer Oberreuter have testified as to the content of the juvenile's statement because that testimony would have been a clear violation of defendant's constitutional right to be confronted by his accuser.[5] Thus, the equivocal conduct of defendant is alleged to be the sole justification for not barring the officer's testimony. In effect, the prosecution is in the position of contending that defendant's conduct constituted a waiver of his Fifth and Sixth Amendment rights.

In Miranda v. Arizona, 384 U. S. 436, 475, 86 S. Ct. 1602, 1628, 16 L. ed. 2d 694, 724 (1966), the Supreme Court stated:

"This court has always set high standards of proof for the waiver of constitutional rights * * *."

The critical issue in this appeal thus becomes: What degree of certainty is required to hold that defendant's conduct in the face of a criminal accusation made by another manifests an adoptive admission which would constitute a waiver of constitutional rights.

Surprisingly, few occasions have previously arisen where that precise issue has been litigated. Perhaps the case most analogous to the instant case is State v. Rice, 37 Wis. 2d 392, 155 N. W. 2d 116 (1967), where defendant was convicted of posses-

---

[4] In Miranda v. Arizona, 384 U. S. 436, 468, note 37, 86 S. Ct. 1602, 1625, 16 L. ed. 2d 694, 720 (1966), the following rule was announced: "* * * [I]t is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial that he stood mute or claimed his privilege in the face of accusation."

In State v. Beck, 289 Minn. 287, 183 N. W. 2d 781 (1971), this court followed this rule and held that it was reversible error to allow a police officer to testify that the Miranda warnings had been given to the defendant, unless such testimony was employed as a foundation for the admission of a confession.

[5] Pointer v. Texas, 380 U. S. 400, 85 S. Ct. 1065, 13 L. ed. 2d 923 (1965); State v. Jordan, 272 Minn. 84, 136 N. W. 2d 601 (1965); See, State v. Wiley, 295 Minn. 411, 205 N. W. 2d 667 (1973).

sion and use of narcotic drugs. Defendant and one Davis had been apprehended by the police. Thereafter, during police interrogation and in the presence of defendant, Davis made statements incriminating defendant. At trial, a police officer who was present during that interrogation was allowed to testify as to the content of Davis' statement. The testimony included the following exchange:

" 'Q. After these statements were made in response to these questions to Oliver Leon Davis, what reaction was there on the part of the defendant in this case? What did he say? A. He didn't say anything; he just snickered.' " 37 Wis. 2d 396, 155 N. W. 2d 119.

This testimony was held to be inadmissible. The court stated:

"Miranda v. Arizona (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694, closes the door to the admissibility of such testimony relating to the demeanor of the defendant. In Miranda, *supra*, at footnote 37, the United States Supreme Court stated:

'The prosecution may not * * * use at trial the fact that he stood mute or claimed his privilege [of self-incrimination] in the face of accusation.' " Id.

The Wisconsin court did not discuss the possible application of the Sixth Amendment to the testimony at issue.

In Bill v. Farm Bureau Ins. Co. 254 Iowa 1215, 1222, 119 N. W. 2d 768, 772 (1963), the trial court in a civil action on a claim under an insurance policy found that a negative nod of a head did not constitute an adoptive admission on the basis that there was "too much ground for conjecture there on the part of the jury as to the implications they can draw from that [conduct]." However, the Iowa Supreme Court disagreed, stating as follows:

"* * * A nod of the head is universally understood to be an affirmative or 'yes' answer; a shake of the head is equally well understood to mean a negative or 'no' reply. It is true the lateral motion might in some circumstances mean merely bewilderment

or confusion, and 'I don't know' answer. But this was an interpretation to be made by the jury." 254 Iowa 1223, 119 N. W. 2d 773.

The rather liberal view espoused in the Bill case may be distinguished from the situation presented in the instant appeal on two grounds. First, the record in the instant case does not indicate whether defendant's conduct [the head nod and laughter] was positive or negative in character. Secondly, this case is a criminal proceeding in which fundamental constitutional rights are applicable, as opposed to the civil nature of the Bill case.

Several cases have taken a stricter view, holding that an admission must be *unequivocal, positive, and definite* in order to be placed before the trier of fact.[6]

The instant case provides an appropriate occasion for this court to announce guidelines for the use or exclusion of adoptive admissions in criminal proceedings. The standard set forth in the cases cited in note 6 appears to be in conformity with the Miranda mandate that "high standards of proof" are required for the waiver of constitutional rights. Indeed, the instant case is a compelling example of the necessity of such a stringent standard. But for the equivocal conduct of defendant during the interrogation of the juvenile, the accusatory statements would not have been admissible because defendant did not have the opportunity to cross-examine his accuser.[7] The prosecution here seeks to "end run" the constitutional impediments at issue by attempting to categorize defendant's conduct as an adoptive admission. The probative value of defendant's conduct is minimal. However, the substance of the juvenile's statement is of major probative effect.[8]

---

[6] Hudson v. Augustine's, Inc. 72 Ill. App. 2d 225, 218 N. E. 2d 510 (1966); Pulver v. Union Inv. Co. 279 F. 699, 705 (8 Cir. 1922). Both of these cases were civil proceedings.

[7] See cases cited in note 5, *supra.*

[8] As will be shown, but for the statement, defendant could not have been convicted as charged.

In summary, we announce the following rule: Where hearsay accusations are sought to be introduced as evidence against a defendant in a criminal proceeding on grounds that the hearsay was "adopted" by defendant as an admission of his guilt, the trial court must first determine that the asserted adoptive admission be manifested by conduct or statements which are *unequivocal, positive, and definite* in nature, *clearly showing* that in fact defendant intended to adopt the hearsay statements as his own.[9]

Under the above rule, the testimony of Officer Oberreuter would not have been admissible.

■ There is little question that, but for the disputed testimony, defendant's guilt was not proven beyond a reasonable doubt. At most, the other evidence on the record shows that defendant was in the Wonder Bread parking lot snooping around the parked vehicles. This falls far short of showing that any attempted theft was in progress. In State v. Roberts, 296 Minn. 347, 353, 208 N. W. 2d 744, 747 (1973), this court stated:

"* * * Before a Federal constitutional error can be held harmless, the court must be able to declare a belief that it is harmless beyond a reasonable doubt."

When the evidence of record in the present case is considered in context of that standard, there can be little doubt that the erroneous admission of the hearsay testimony was prejudicial.

The prosecution points out that this appeal may be moot because defendant has served his sentence of 1 year's probation. We cannot agree. Defendant has the stigma of a conviction of a criminal offense on his record. That fact alone defeats the assertion of mootness.

The judgment of conviction is reversed.

---

[9] We do not today hold that a head nod can never constitute an adoptive admission. What does or does not constitute an adoptive admission under the aforesaid guidelines must be determined in context of the particular circumstances in which it was given. However, the circumstances surrounding defendant's alleged adoptive admission in this case do not meet the requisite degree of definiteness and certainty.