STATE of Minnesota, Respondent,

v.

William Albert MORGAN, Appellant.

No. 49004.

Supreme Court of Minnesota.

July 3, 1980.

C. Paul Jones, Public Defender, Robert E. Oliphant and Allen E. Christy, Jr., Asst. Public Defenders, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Asst. County Atty., Chief, Appellate Division, David W. Larson, and Janeen E. Rosas, Asst. County Attys., Minneapolis, for respondent.

Heard before ROGOSHESKE, PETERSON, and KELLY, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Defendant, William Morgan, was convicted by a jury of third-degree murder in the November 27, 1977, shooting death of Harlan Mack and was sentenced by the district court to 1 to 25 years in prison.

Defendant appeals from the denial of his motion for a new trial on the grounds that a confession and a third-party statement were improperly admitted at trial; that the trial court erred in refusing to give requested instructions; that defendant was prejudiced by certain allegedly improper acts by the prosecution; that the judge was prejudiced and as a result defendant was denied a fair trial; and that evidence of the victim's prior convictions was improperly excluded. We affirm.

On November 26, 1977, defendant, then 20 years of age, read an advertisement in the Twin Cities Reader—"[Gay white male] desires [employed white male] Housemate 18 to 35 for some help around house, yard, and intimate relationship"—placed by Harlan Mack, a 54-year-old homosexual. Defendant decided to respond to the advertisement and to pose as homosexual for the purpose of gaining entry to Mack's home and robbing him. Defendant contacted Mack and went to Mack's home. While there, he took note of Mack's valuable stereo and electronics equipment. Mack made sexual advances to him, but defendant declined for the time and left, promising to call again.

The next day, defendant contacted Scott Warnke and the two devised a plan to rob Mack. Defendant suggested to Warnke that a gun might help to frighten Mack into submission, so Warnke gave him a gun containing two live shells. Defendant, with the gun under his shirt, then telephoned Mack, who met him and took him to Mack's home. Meanwhile, Warnke drove alone to a place a short distance from Mack's home to wait for defendant, who was to tie Mack up and summon Warnke to help carry the equipment away.

After drinking several cans of beer, Mack suggested he and defendant have sexual

relations, and defendant, feigning agreement, followed Mack to the bedroom. Mack removed his clothes while defendant pretended to do the same but stalled, reasoning that Mack's state of undress would make him more manageable.

According to defendant, Mack then approached him and "grabbed ahold of his (defendant's) penis." Defendant became frightened by Mack's advances, jumped, shouted "Hold it!" and pulled out the gun. In the struggle that ensued, defendant pulled the trigger of the gun three times; the third time, the gun discharged.

When defendant saw Mack fall to the floor, defendant ran outside to find Warnke. The two returned to complete the robbery and to summon aid for Mack but left without entering the home when they saw emergency vehicles. Mack died the following morning from a gunshot wound to his head.

Shortly after the shooting, police officers picked up Warnke on another matter but released him after questioning. Warnke had the gun with him at the time but managed to hide it in the squad car, where the gun was later found and traced to him. Warnke was picked up again and questioned about the Mack shooting, whereupon he gave a full statement detailing his and defendant's involvement.

When defendant learned he was being sought in connection with the shooting, he decided to turn himself in. On the morning of December 5, 1977, his father and brother drove him to the police station to "straighten things out." The police read him the *Miranda* warning, and defendant stated he understood his rights and chose to waive them. He was then questioned by Lieutenant Richard O'Brien, confessed to shooting Mack, and signed a written statement. Defendant also asked for and read Warnke's statement and expressed agreement with it except for Warnke's description of the shooting. At trial, defendant's confession and Warnke's statement, minus the portions with which defendant disagreed, were admitted over the objections of defense counsel.

1. Defendant challenges the admission of his confession on the ground that at the time he waived his *Miranda* rights and agreed to talk to Lieutenant O'Brien he was so intoxicated that he was incompetent to waive those rights knowingly and intelligently, as required by the United States Supreme Court in *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

Defendant testified at the omnibus hearing that sometime during the night before he made his confession he consumed a large quantity of beer and used several drugs, including cocaine, marijuana, LSD, and "angel dust." He also stated he had neither eaten nor slept for the 18 hours preceding his questioning by the police. He claimed he could not remember being informed of his rights or that he waived them.

Members of defendant's family testified that he had a history of drug use and that in various phone conversations they had with him the night before he made his confession he sounded "high" and intoxicated. Defendant's father and brother also testified that he seemed intoxicated when they drove him to the police station and that during the interrogation he was "fairly incoherent" and had difficulty responding to questions.

On the other hand, the two officers present at the interrogation testified they noticed nothing unusual about defendant's behavior and observed no signs of intoxication. Defendant responded normally to questioning and behaved like other persons with whom the officers had spoken. While defendant was obviously nervous and told the officers he had not eaten or slept, he never mentioned that he felt intoxicated or that he could not understand what was happening. Furthermore, defendant's father and brother were with him during part of the interrogation and never suggested that defendant was in no condition to be questioned. His brother admitted under cross-examination that defendant had been able to walk unaided and that his behavior could have been attributable to nervousness.

The trial court concluded that "the proper constitutional warnings were granted and a knowing and intelligent waiver was made, not only orally but in writing, and \* \* \* I am clearly satisfied as a factfinder that the oral and written statements are proper evidence to be presented to a jury."

■ Ordinarily the trial court must make specific factual findings at an omnibus hearing so that it is possible for us to ascertain the basis for its rulings. *State v. Rainey*, 303 Minn. 550, 226 N.W.2d 919 (1975). We stated in *State v. Linder*, 268 N.W.2d 734, 735 (Minn.1978), that in reviewing a trial court ruling on the issue whether a waiver of constitutional rights was knowing and intelligent:

> [T]his court will not reverse specific findings of the district court unless they are clearly erroneous, but this court will make an independent determination, on the basis of the facts as found, of whether the state has shown by a fair preponderance of the evidence that the waiver was knowing, intelligent, and voluntary.

The trial court failed to make specific factual findings in this case, but defendant neither demanded at hearing or in his motion for a new trial that specific findings be made nor does he challenge the absence of such findings on appeal. We must assume, then, that the trial court, if asked, would have made findings supporting its conclusion. The question whether to believe the testimony of defendant and his family or the testimony of the police officers was one of credibility for the trial court as factfinder to resolve.[1] Since the court concluded defendant's waiver was knowing and intelligent, we can assume it chose to believe the police officers, a choice clearly supported by the circumstances.

■ The issue before the trial court was not whether defendant was intoxicated but whether he was intoxicated "to the extent that he was not competent to make a voluntary and intelligent waiver of his constitutional rights." *Jankord v. State*, 290 Minn. 168, 172, 186 N.W.2d 530, 533 (1971), cert.

den. 404 U.S. 942, 92 S.Ct. 292, 30 L.Ed.2d 257 (1971). Defendant was responsive during questioning and gave a coherent, detailed account of the crime. He was able to read and sign a written statement. Moreover, he was able to read Warnke's statement with enough clarity of thought to comment on its accuracy and to point out specific portions with which he did not agree. The trial court's conclusion that defendant was able to and did make a knowing and intelligent waiver of his rights is supported by a fair preponderance of the evidence, and the confessions were properly admitted.

2. Defendant also objected to the admission into evidence of the Warnke statement implicating defendant. The statement, minus the portions with which defendant had disagreed, was allowed into the record on the ground that it was an adoptive admission by defendant of a third-party statement within the guidelines of *Village of New Hope v. Duplessie*, 304 Minn. 417, 231 N.W.2d 548 (1975).

■ Rule 801(d)(2)(B), Minn.R.Evid., provides that a statement of a third person offered against a party is not hearsay and is therefore admissible where the party has "manifested his adoption [of the statement] or belief in its truth." We noted in *Duplessie* that a defendant in a criminal case has a constitutional right to confront his accuser and that any waiver of this right must be clear and unequivocal. Therefore, "the trial court must first determine that the asserted adoptive admission be manifested by conduct or statements which are *unequivocal, positive, and definite* in nature, *clearly showing* that in fact defendant intended to adopt the hearsay statements as his own." 304 Minn. at 425, 231 N.W.2d at 553. If there has been such an adoption, the statement is no longer an accusation but an admission and therefore will not give rise to the right of confrontation.

■ Defendant, on his own initiative, asked for Warnke's statement, read it carefully, and stated that he agreed with it

---

1. *State v. LaFrance*, 302 Minn. 245, 246, 223 N.W.2d 813, 814 (1974).

except for certain portions that he pointed out to the police. We hold that defendant's conduct was unequivocal and clearly showed his adoption of Warnke's account of the crime as his own. The Warnke statement was thus properly admitted.

3. Defendant next claims error in the trial court's refusal to instruct the jury on various lesser offenses. Instructions were given on third-degree murder (Minn.Stat. § 609.195(2) (1978)), first-degree manslaughter committed in the heat of passion (§ 609.20(1)), and second-degree manslaughter (§ 609.205), but defendant had also requested instructions on first-degree manslaughter in the commission of a crime (§ 609.20(2)), simple and aggravated assault (§§ 609.22, 609.225), and simple and aggravated robbery (§§ 609.24, 609.245).[2]

■ The trial court was justified in refusing to instruct the jury on the offenses of simple and aggravated assault and simple and aggravated robbery.[3] We held in *State v. Leinweber*, 303 Minn. 414, 422, 228 N.W.2d 120, 125–26 (1975), that an instruction on a lesser offense is required only where the jury could reasonably convict defendant of the lesser offense and at the same time could justifiably acquit him of the greater offense. Since the assault and robber in this case undisputedly resulted in death, the jury could not convict defendant of assault or robbery and at the same time find him not guilty of murder or manslaughter. *Cf. State v. Briggs*, 256 N.W.2d 305 (Minn.1977).

■ Finally, defendant contends the trial court should have given an instruction on first-degree manslaughter in the commission of a crime. We recently held, in *State v. Adams*, 295 N.W.2d 527 (Minn.1980), filed June 27, 1980), that where it is clear the crime that accompanied the killing was a "felony upon or affecting the person," the court need only instruct on third-degree

felony murder and need not also instruct on first-degree manslaughter in the commission of a crime, because the jury could not reasonably convict defendant of the latter and at the same time acquit him of the former. We therefore hold the trial court was correct in refusing defendant's requested instructions on lesser offenses.

4. Defendant also contended at trial that the shooting of Mack should be excused as an authorized use of force under § 609.06(3), which provides that "[r]easonable force may be used upon or toward the person of another without his consent when the following circumstances exist or the actor reasonably believes them to exist: * * * (3) When used by any person in resisting or aiding another to resist an offense against the person." Defendant argued he reasonably believed Mack was about to commit the offense of sodomy against him and that he was therefore justified in *shooting* Mack in resisting the offense. The trial court, however, refused to instruct the jury on authorized use of force, and defendant contends this was error.

■ We have established four criteria for determining when use of force is authorized:

(1) absence of aggression or provocation on the part of the slayer;

(2) actual and honest belief of the slayer that he was in imminent danger of some felony and that it was necessary to take the action he did;

(3) existence of reasonable grounds for such belief; and

(4) duty of the slayer to retreat or avoid the danger if reasonably possible.

*State v. Columbus*, 258 N.W.2d 122, 125 (Minn.1977); *State v. Johnson*, 277 Minn. 368, 373, 152 N.W.2d 529, 532 (1967).

■ Defendant, by his own admission, was the perpetrator of the situation in

---

2. Defendant also contends on appeal that an instruction on the offense of conspiracy should have been given. He did not request such an instruction at trial, however, and therefore waived his right to the instruction. *State v. Sobieck*, 299 Minn. 221, 216 N.W.2d 832 (1971).

3. Aggravated robbery is a lesser included offense of murder in the third degree in this case only, because the indictment charges aggravated robbery as the underlying felony.

which he found himself. He posed as a homosexual and invited advances. Therefore, the first criterion for authorized use of force is clearly absent.

Defendant claims he attempted to withdraw from the encounter by shouting "Hold it!" and that in so doing reacquired the right to defend himself. Even if this were true, defendant did not meet the fourth requirement—to retreat or avoid the danger—because he made no attempt to retreat or otherwise avoid the advances. Defendant was younger, taller, and heavier than Mack and was dressed while Mack was not. His failure to retreat or use other means to resist Mack precluded any claim that he was acting in self-defense. The instruction on authorized use of force was properly denied.

5. Defendant next contends that he was prejudiced by the state's failure to disclose before trial a police report identifying a fingerprint found in Mack's home as that of defendant. Defendant had filed a demand for disclosure on December 7, 1977, under Minn.R.Crim.P. 9, but the report, though prepared in December, did not reach the prosecutor or defense counsel until February 9, 1978, the morning of the expert's testimony.

Rule 9.01, subd. 1, requires disclosure to take place before the omnibus hearing, and the duty to disclose applies to all information in the hands of the prosecutor and participating state agents.

The state admits it failed to comply with Rule 9, but asserts that failure was inadvertent. When the prosecutor realized defense counsel did not have the report, he supplied him with a copy in advance of the expert testimony. Defense counsel listened to the testimony in the morning and examined the witness extensively but made no objection to the introduction of the report until that afternoon, at which time he moved for a mistrial or to strike the expert's testimony, stating that he had been unaware the report had not been disclosed earlier. The motion was denied.

We agree with the trial court that defendant was in no way prejudiced by the delay in receiving the report. Counsel made a complete cross-examination of the expert and was allowed to remove the report for examination by his own expert but declined the court's offer of additional time in which to obtain an expert to testify on behalf of defendant. There was no need to strike the testimony where the delay in disclosure created no prejudice, and Rule 9.03, subd. 8, which establishes the sanctions for noncompliance with the discovery rules, does not mandate suppression of evidence belatedly disclosed but allows the trial court to take such action as it deems just. Defendant offers no reason why the measures taken by the trial court were not adequate.[4]

6. Defendant also alleges he was prejudiced by the manner in which the prosecutor undertook to impeach one of defendant's witnesses, Robert Vigness. Vigness had told police that he had spoken with defendant and defendant had told him he had shot Mack "when [Mack] wasn't looking." At trial, however, Vigness testified that he had not spoken with defendant and that the description of the shooting was Warnke's, not defendant's.

The prosecutor undertook to impeach Vigness' testimony that he had not spoken with defendant by reminding him of his inconsistent prior statement that he had. Vigness readily admitted the inconsistency and explained that he had been confused at the time he spoke with the police. But the prosecutor, after eliciting the admission of inconsistency, went further and read to Vigness the portion of his prior statement describing the circumstances of the shooting. Defendant objected on the ground that this was improper impeachment, but the judge refused to grant defendant's motion for a mistrial or to strike the testimony. Defendant claims prejudicial error and argues that the prosecutor deliberately read the substance of the prior statement into evidence not to impeach—that had already

---

4. We also note that suppression of the fingerprint identification testimony would not have changed the verdict, because defendant by his own admission had been in Mack's home.

been accomplished—but to allow the jury to consider as substantive evidence the hearsay account of the shooting.

 We need not decide whether the prosecutor conducted an improper impeachment. It is clear that there was no prejudice to defendant. Defendant's concern is with the statement that defendant had shot Mack when Mack was not looking. This statement is relevant only to defendant's claim that the two had struggled before the gun discharged. While a struggle might be relevant to a claim of authorized use of force, we have already concluded that as a matter of law defendant could not assert that his use of force in this case was justified. Furthermore, the occurrence of a struggle would have had no bearing on the conviction for third-degree felony murder, because intent to kill is not a requisite element of the crime. In addition, the judge gave a cautionary instruction on the use of impeachment testimony for purposes of credibility only. We hold, therefore, that defendant was not prejudiced by the prosecutor's impeachment of Vigness.

7. Defendant points to two comments made by the trial judge during the sentencing proceeding and claims that the comments—one relating to the judge's concern about defendant's drug use, the other to a piece of evidence which was not admitted at trial—indicate the judge was prejudiced and as a result defendant was denied a fair trial. We held in *State ex rel. Jones v. Tahash*, 276 Minn. 188, 190, 149 N.W.2d 270, 272 (1967), that prejudice on the part of the trial judge must be determined on the basis of the record as a whole. However, while defendant contends he was denied a fair trial, he admits there is nothing in the trial record indicating prejudice. The challenged comments appear only in the sentencing record, yet defendant does not appeal from the sentence. We have examined the record and conclude there was no prejudice on the part of the judge that would have prevented defendant from receiving a fair trial.

---

5. Defendant, of course, was not even aware of Mack's alleged criminal record at the time of his encounter with Mack.

8. Defendant's final assignment of error was to the trial court's exclusion of evidence of Mack's prior criminal convictions. He argues the convictions were relevant to his claim that he was acting in self-defense. We have already concluded that defendant, as a matter of law, could not claim self-defense in shooting Mack. Furthermore, Mack's convictions occurred 20 years prior and did not involve violent crimes.[5] Therefore, evidence of the convictions had no conceivable probative value and was properly excluded by the court.

Affirmed.