**STATE of Minnesota, Respondent,**

v.

**Mahlon D. GOODRIDGE, Appellant.**

**No. CX–83–1106.**

Supreme Court of Minnesota.

July 13, 1984.

C. Paul Jones, Public Defender, Kathy King, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Vernon E. Bergstrom, Richard Osborne, J. Michael Richardson, Beverly J. Wolfe, Asst. County Attys., Minneapolis, for respondent.

SCOTT, Justice.

Defendant Mahlon Goodridge was indicted on two counts of first-degree murder in violation of Minn.Stat. §§ 609.185(2), 609.-185(3) and 609.05 (1982), in connection with the brutal beating death of Mrs. Luella Larson.[1] Following a jury trial in Henne-

---

1. Minn.Stat. § 609.185(2) (1982) provides that a person is guilty of first-degree murder if that person "[c]auses the death of a human being while committing or attempting to commit criminal sexual conduct in the first or second degree with force or violence, either upon or affecting the person or another." Minn.Stat. § 609.185(3) (1982) provides that a person is guilty of first-degree murder if that person "[c]auses the death of a human being with intent to effect the death of the person or another, while committing or attempting to commit burglary * * *." In conjunction with both of those crimes, defendant was indicted under Minn. Stat. § 609.05 (1982), which provides in subd. 1: "A person is criminally liable for a crime com-

pin County District Court, defendant was found guilty as charged and sentenced to two concurrent life terms. We affirm one conviction and sentence (D.C. No. 81771–1), but vacate defendant's other conviction and sentence (D.C. No. 81772–1).

During the evening of November 19, 1982, defendant socialized with three friends—Mitchell Pierce, Leland Mark Hoagland and Troy Palthen. The four drank beer and smoked marijuana at defendant's house in north Minneapolis. About 11:00 p.m., they ran out of beer and then began planning a burglary "to get some more liquor and * * * maybe some quick money." After some discussion, the group decided to burglarize a home located at 2827 Humboldt Avenue North in Minneapolis. Defendant later explained to the police why that residence was chosen:

Troy told us that he had burglarized that house a few months ago and that he'd got a lot of money out of it. He said that a blind guy lived there. We decided to burglarize the house. Mitch said if there was anyone home there, that we'd take over and hold them down and tie them up.

The four left defendant's house about 11:45 p.m. and walked toward 2827 Humboldt Avenue North.

The victim, Mrs. Luella Larson, lived alone at that residence. Her husband had died only nine days earlier. She was 71 years old and totally blind. That evening, Mrs. Larson had gone to bed before defendant and his friends arrived at her home.

When the four arrived at their destination, they initially tried to enter through the rear door, but found it locked. Palthen then discovered that the front door was unlocked and they all entered the house. Once inside, they found Mrs. Larson asleep in her bedroom. Pierce and Hoagland tied her up with a belt they found in the house. After ransacking the bedroom in an unsuccessful attempt to find cash, defendant de-

manded that the victim reveal the location of her money. He admitted kicking and striking her when she failed to respond to his inquiries. He gave the following statement to the police:

I kicked her once in the mouth and once on the shoulder and I slapped her a few times and I hit her once in the mouth with my fist. Mark was holding her mouth most of the time. Mitch kept yelling at me to hit her so she'd tell us where the money was. I wasn't beating her for fun but Mitch was. He was slamming his fist into her face and her blood was flying and he was yelling at her to tell him where the money was and he kept on hitting her. Mark was beating her hard with his fist too.

At some point, Mrs. Larson was able to free an arm to reach for an alarm by her bed. Defendant saw her reaching for the alarm and knocked her hand away. Hoagland then tied her up again. Sometime later, defendant rubbed saliva on Mrs. Larson's ring finger and removed her wedding rings.

Denying that he sexually assaulted the victim, defendant described the following indignities to which she was subjected by the others:

Mitch and Mark had her on the bed and they sexually assaulted her. I don't know exactly what they did but they had her on the bed and one of them was sticking his fingers in and out of her ass—I'm pretty sure that was Mitch because he was hollering "Fuck her in the ass," and telling her that we were going to kill her if she didn't tell us where the money was. He could have been sticking his fingers in her vagina too. Mitch had a little flashlight and he could have jammed that up her too, but I'm not sure about that. They had her panties down around her knees.

Approximately twenty minutes after entering the house, Mrs. Larson's assailants

---

mitted by another if he intentionally aids, advises, hires, counsels, or conspires with or other-

wise procures the other to commit the crime."

left, leaving her lying lifeless on the bed. Unsure whether she was dead or alive, Pierce assured the others, "We'll find out if she's dead on the news tomorrow." Along with the wedding rings, they obtained some steaks, beer, brandy, a gold watch, and about ten dollars. Defendant and the others returned to defendant's house where they drank the brandy, ate the steaks, and "partied" with "beer and stuff" purchased with the thirty dollars obtained from the sale of Mrs. Larson's wedding rings.

At trial, Dr. Ned Austin, Hennepin County Deputy Medical Examiner, testified in detail about the extensive injuries Mrs. Larson suffered from the beatings. He also testified that the bleeding or bruising inside the victim's vagina "would be consistent with some type of penetrating force to the vagina prior to the death of the individual." He opined that her "death resulted from multiple traumatic injuries as a consequence of a beating."

Following his arrest in connection with Mrs. Larson's death, Pierce gave a statement in the early morning hours of November 25, 1982, implicating himself and the others. He essentially claimed that defendant and Hoagland were "punching" the victim and that defendant hit her the most. Hoagland and defendant were then arrested and they also gave statements to the police. Hoagland gave his statement at 8:00 a.m. He told the police that all of them, except Palthen, beat the victim and gave the impression that defendant beat her the most severely.

Defendant was interviewed by the police at 10:00 a.m. During the questioning, he asked for and read the written statements given to the police earlier that day by Pierce and Hoagland. Then the following interchange occurred between Lt. Richard O'Brien, the interrogating officer, and defendant:

Q. A few minutes ago I showed you a written statement that was given to the police by Leland Mark Hoagland after his arrest this morning. Did you read this statement?

A. Yes. It's right except that he hit her more than three times.

Q. I also let you read a statement by Mitchell Roland Pierce that he gave to the police after his arrest today. Did you find that to be correct?

A. Yes, except he didn't say to the woman that all we wanted was her money and that we wouldn't hurt, I said that. Also when he said he didn't sexually assault or hit the woman—those are lies. He was hitting and kicking her and sticking his fingers up her ass and I think her vagina too. Else it's right.

At the omnibus hearing, defendant objected to the admission of the statements by Pierce and Hoagland on hearsay grounds. The trial court overruled the objections, and those statements, along with defendant's confession, were admitted into evidence at trial.

This case presents the following issues:

(1) Whether the statements by Pierce and Hoagland were admissible as adoptive admissions by defendant.

(2) Whether the evidence was sufficient to support defendant's first-degree murder convictions.

(3) Whether one of defendant's first-degree murder convictions should be vacated.

1. On appeal, defendant initially contends that the written statements by Pierce and Hoagland should have been excluded as hearsay. He specifically argues that the statements neither fell within the co-conspirator exception to the hearsay rule nor were they statements against penal interest. Alternatively, he contends that the admission of those statements violated his constitutional right to confront his accusers.

▇▇▇ As an initial matter, defendant fails to address the real basis of the trial court's ruling. The trial court admitted the statements into evidence on the ground that they were adoptive admissions by defendant. A statement by a third person is not hearsay if the party against whom it is offered has "manifested his adoption [of

the statement] or belief in its truth." Minn.R.Evid. 801(d)(2)(B). While a defendant in a criminal case has a constitutional right to confront his accuser, this court has stated that "an adoptive admission manifested in an unequivocal manner constitutes a waiver of * * * the right * * * to be confronted by one's accuser." *Village of New Hope v. Duplessie*, 304 Minn. 417, 421, 231 N.W.2d 548, 551 (1975). Thus, where hearsay accusations are offered into evidence against a criminal defendant as adoptive admissions, "[t]he trial court must first determine that the asserted adoptive admission be manifested by conduct or statements which are *unequivocal, positive, and definite* in nature, *clearly showing* that in fact defendant intended to adopt the hearsay statements as his own." *Id.* at 425, 231 N.W.2d at 553 (emphasis in original). "If there has been such an adoption, the statement is no longer an accusation but an admission and therefore will not give rise to the right of confrontation." [2] *State v. Morgan*, 296 N.W.2d 397, 401 (Minn.1980); *see also Poole v. Perini*, 659 F.2d 730, 733 (6th Cir.1981), *cert. denied*, 455 U.S. 910, 102 S.Ct. 1259, 71 L.Ed.2d 450 (1982); *State v. Buckner*, 223 Kan. 138, 145, 574 P.2d 918, 924 (1977); *State v. Kimball*, 424 A.2d 684, 688–89 (Me.1981).

The trial court ruled that defendant "unequivocally adopted" the statements by Pierce and Hoagland "as part of his own statement," particularly where he corrected those parts of the statement with which he did not agree. The record amply supports that ruling. Moreover, the instant case is virtually identical to *Morgan*. In *Morgan*, as in this case, defendant asked for his accomplice's statement, read it carefully and then expressed agreement with it except for certain portions that he pointed out to the police. This court held that "defendant's conduct was unequivocal and clearly showed his adoption of [his accomplice's] account of the crime as his own," and that the "statement was thus properly admitted." *Morgan*, 296 N.W.2d at 402.

■ The only critical difference between *Morgan* and the instant case is that the statement in *Morgan* was admitted "minus the portions with which defendant had disagreed." *Morgan*, 296 N.W.2d at 401. In contrast, the statements by Pierce and Hoagland were admitted, including those portions with which defendant disagreed. That difference is inconsequential in the circumstances presented here. Defendant agreed with his accomplices' descriptions of his conduct; the portions with which he disagreed focused on his accomplices' conduct. Thus, admitting the statements in question in their entirety did not prejudice defendant under the facts of this case.

■ 2. Defendant next contends that both first-degree murder convictions must be reversed on the ground of insufficient

2. Citing certain decisions by the United States Supreme Court, defendant contends that the confrontation clause proscribes the admission into evidence of a non-testifying accomplice's statement which was given in a custodial setting and which implicates the accused. *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (held that the admission of an out-of-court confession of non-testifying codefendant which implicates defendant violates the defendant's right of confrontation, despite a cautionary instruction that confession was not to be used as evidence against defendant); *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) (held that the confrontation clause prohibited the reading of a non-testifying accomplice's purported confession which implicated defendant, for the purpose of refreshing the recollection of that witness). Neither of those cases presented circumstances in which defendant adopted the statement of his accomplice as his own. Where the defendant has done so, the cases cited by defendant are inapplicable. *See Dutton v. Evans*, 400 U.S. 74, 98, 91 S.Ct. 210, 224, 27 L.Ed.2d 213 (1970) (Harlan, J., concurring). As one court has stated:

[T]he constitutional protection afforded defendant * * * by the Confrontation Clause * * * is the guarantee of opportunity for cross-examination, to expose the possible unreliability of evidence. Since, however, the traditional common law rationale for receiving the extra-judicial admission of a party in evidence against him is that a party "cannot object to his failure to have a chance to cross-examine himself," i.e., to confront himself, * * * there is no reasonable basis for applicability of the Confrontation Clause as to a party's admissions.

*State v. Kimball*, 424 A.2d 684, 688–89 (Me.1981) (citations omitted).

evidence. On appeal, this court examines the evidence in the light most favorable to the state and determines whether the jury could reasonably have found defendant guilty. *State v. Lloyd,* 345 N.W.2d 240, 244 (Minn.1984).

■ First-degree murder is committed under Minn.Stat. § 609.185(3) when a person "[c]auses the death of a human being with intent to effect the death of the person or another, while committing or attempting to commit burglary * * *." The trial court also instructed the jury under Minn.Stat. § 609.05, subd. 1, which provides that "[a] person is criminally liable for a crime committed by another if he intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Case law under section 609.05 is clear that "a person may be held criminally liable as an aider and abettor without actively participating in the overt act constituting the primary offense." *Matter of the Welfare of M.D.S.,* 345 N.W.2d 723, 733 (Minn.1984) (quoting *State v. Strimling,* 265 N.W.2d 423, 429 (Minn.1978)). Moreover, criminal intent may be inferred from presence, companionship and conduct before and after the offenses are committed. *State v. Parker,* 282 Minn. 343, 355, 164 N.W.2d 633, 641 (1969).

■ There is no merit to defendant's challenge. By his own admission, defendant's involvement in this crime was direct and continuing. While "partying" at defendant's house, the four participants decided to burglarize the home of Mrs. Larson. They were aware that persons would probably be present there and one participant suggested that they would "take them over and hold them down and tie them up." Defendant admitted kicking, slapping and punching the victim during the burglary. After the victim at one point freed an arm, defendant prevented her from reaching for an alarm and then another participant retied her. Based on his accomplices' confessions, the jury would have been warranted in finding that defendant beat the victim more extensively than he admitted in his statement to the police and in his trial testimony. Finally, defendant admitted that he and the others left the victim lying lifeless on her bed while they returned to his house and "partied" with the ill-gotten spoils. Based on the above evidence, we are satisfied that the jury would have been warranted in finding that defendant was guilty of active conduct sufficient to convict him either of committing first-degree murder under section 609.185(3) or of intentionally aiding another in the commission of that crime.

■ 3. We need not decide the sufficiency of the evidence to justify a conviction under section 609.185(2), since the evidence was clearly sufficient to justify conviction under section 609.185(3) and since one of the two convictions must be vacated pursuant to section 609.04. Under section 609.04, a defendant cannot be convicted twice for the same offense against the same victim on the basis of the same act. *See State v. Ture,* 353 N.W.2d 502 (Minn. 1984); *State v. Patch,* 329 N.W.2d 833, 837 (Minn.1983); *State v. Bowser,* 307 N.W.2d 778, 779 (Minn.1981). In the instant case, defendant participated in only a single act of murder. Accordingly, we vacate defendant's conviction under section 609.185(2) and his sentence for that conviction.

Affirmed in part; reversed in part.