**IN THE COURT OF APPEALS OF IOWA**

No. 20-1591
Filed April 13, 2022


**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**WILLIAM M. GOODON,**
      Defendant-Appellant.
_____


Appeal from the Iowa District Court for Monona County, Roger L. Sailer,
Judge.


William Goodon appeals from his conviction for possession of
methamphetamine, third or subsequent offense. **AFFIRMED.**


Martha J. Lucey, State Appellate Defender, and Vidhya K. Reddy, Assistant
Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney
General, for appellee.


Considered by Bower, C.J., Greer, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2022).

**VOGEL, Senior Judge.**

"As has been often said, the accused is not entitled to a perfect trial, but only a fair trial." *State v. Webster*, 865 N.W.2d 223, 233 (Iowa 2015). William Goodon appeals from his conviction for possession of methamphetamine, third or subsequent offense. He argues the district court erred in admitting evidence a syringe and needle field-tested positive for methamphetamine and in admitting several out-of-court statements over his hearsay objections. We reject his arguments and affirm.

## I. Background Facts and Proceedings

Shortly before midnight on March 7, 2020, Alex Boyle, a police officer for the City of Mapleton, saw a pickup briefly drive on the wrong side of the road. Officer Boyle began following the pickup and saw the pickup cross the center line multiple times. Officer Boyle suspected the driver was impaired and stopped the pickup. He approached the pickup and spoke to the driver, identified as Kayleen Stallman.

Police Chief Jared Clausen was also at the scene and spoke to the pickup's passenger. The passenger initially gave a false name but later admitted to being Goodon. Chief Clausen noticed what appeared to be track marks—"marks that are consistent with using methamphetamine through a needle"—on Goodon's left arm. Chief Clausen then used his drug-sniffing dog to sniff the outside of the pickup. The dog detected narcotics on the passenger side where Goodon was sitting.

Based on the evidence of drug use and possession observed so far, Officer Boyle and Chief Clausen began to search the pickup. The search revealed the

following: a syringe and needle found in the center console, which field-tested positive for methamphetamine; a small digital scale, consistent with the type used when buying or selling drugs; men's clothing, including a jacket containing an apparent methamphetamine pipe with residue inside; an apparent marijuana roach; and another apparent methamphetamine pipe and a baggie containing a crystalline substance, found in the center area. A laboratory test later determined the baggie contained 0.66 grams of methamphetamine.

Goodon was charged with possession of methamphetamine, third or subsequent offense. While awaiting trial, Goodon used a communication device—provided and monitored by the jail—to send and receive text messages. He texted to Stallman, "I don't think you really liked me all methed out. Im a far better man when im not high." He texted to his mother, "I know I have a problem." Before the matter advanced to trial, Goodon sought to exclude evidence the syringe and needle field-tested positive for methamphetamine, statements by Stallman during the traffic stop, and text messages from Stallman while he was in jail awaiting trial. The district court eventually denied Goodon's objections. The jury found Goodon guilty as charged. The court sentenced him to an indeterminate term of incarceration not to exceed fifteen years.[1] He appeals.

## II. Standard of Review

"District court decisions on whether to admit or exclude evidence are typically reviewed for an abuse of discretion. We review hearsay claims, however,

---

[1] With Goodon's stipulation to prior convictions, the district court imposed sentence as a habitual offender pursuant to Iowa Code section 902.8 (2020).

for corrections of errors at law." *State v. Dessinger*, 958 N.W.2d 590, 597 (Iowa 2021).

### III. Analysis

#### A. Field Test Results

Goodon argues the court erred in admitting evidence the syringe and needle field-tested positive for methamphetamine because the State did not provide sufficient foundation to show the scientific reliability of the field testing. *See State v. Murphy*, 451 N.W.2d 154, 155–59 (Iowa 1990) (discussing the scientific reliability of evidence); *see also Ranes v. Adams Lab'ys., Inc.*, 778 N.W.2d 677, 685 (Iowa 2010).

We need not decide the issue because even if the court erred in admitting evidence of field testing, any error was harmless. *See* Iowa R. Evid. 5.103(a) (stating a party claiming error in an evidentiary ruling must show "the error affects a substantial right"). When a nonconstitutional error occurs, we ask, "Does it sufficiently appear that the rights of the complaining party have been injuriously affected by the error or that he has suffered a miscarriage of justice?" *State v. Paredes*, 775 N.W.2d 554, 571 (Iowa 2009) (quoting *State v. Sullivan*, 679 N.W.2d 19, 29 (Iowa 2004)). "In considering harmless error, '[W]e presume prejudice— that is, a substantial right of the defendant is affected—and reverse unless the record affirmatively establishes otherwise.'" *Id.* (alteration in original) (quoting *State v. Newell*, 710 N.W.2d 6, 19 (Iowa 2006)).

It is important to remember Goodon was not accused of any crime related to the syringe and needle or any illicit substance in or on the syringe and needle. Instead, Goodon was accused of possessing methamphetamine in the form of the

crystalline substance found in a baggie, which laboratory testing showed was methamphetamine. Prior to trial, Goodon stipulated to the findings of the lab analysis. At trial, Goodon's strategy focused on whether the State could prove he possessed the substance. The record contains ample evidence he did. Officer Boyle testified he stopped the pickup because he suspected the erratic driving was due to impairment. The drug-sniffing dog detected narcotics around the passenger area of the pickup where Goodon was sitting. Goodon initially gave law enforcement a false name, indicating he did not want an investigation under his true name. Law enforcement then found several items in the pickup consistent with drug use, including a roach, a scale, and two methamphetamine pipes. The used syringe and needle themselves are evidence of drug use, especially considering law enforcement found no evidence of injectable prescribed drugs in the pickup. Finally, Goodon's own jailhouse text messages—including that he has been "all methed out" and "I know I have a problem"—indicate he was using drugs, specifically methamphetamine. Because the field test results on the syringe and needle are only tangentially related to the identity of the crystalline substance found in the baggie, the possession of which Goodon was charged, and because the uncontested laboratory analysis and considerable other evidence supported finding the crystalline substance was methamphetamine, any error in the admission of the field test results on the syringe and needle was harmless.

*B. Hearsay*

Goodon next argues the court erred in admitting three pieces of evidence he claims are hearsay, that is out-of-court statements offered "into evidence to prove the truth of the matter asserted." Iowa R. Evid. 5.801(c).

1.  "Look at his arm"

Goodon argues the following exchange between the State and Chief Clausen produced inadmissible hearsay from Stallman:

> Q. [D]id [Stallman] direct you to a particular piece of evidence to assist in your investigation?  A. Yes, she did.
> Q. And what was the particular piece of evidence that she directed you to?
> [Defense objection, which was overruled.]
> Q. What piece of evidence did she direct you to?  A. She told me to look at his arm.
> Q. Okay. And was that after you had already observed the track marks on the defendant's arm?  A. Yes, it was.

We need not decide if this statement was hearsay because, even if it were, improperly admitted evidence is not prejudicial if there is "substantially the same" evidence already existing in the record.  *Newell*, 710 N.W.2d at 19 (Iowa 2006).  Here, the trial record already included testimony from Chief Clausen that he independently observed the track marks on Goodon's arm.  Stallman's statement to look at Goodon's arm is substantially the same as Chief Clausen's prior personal observations of his arm.  Therefore, the inclusion of Stallman's statement about Goodon's arm was non-prejudicial, and any error in its admission is harmless.

2.  "She was tired"

Goodon also argues the following exchange between the State and Officer Boyle also produced inadmissible hearsay from Stallman:

> Q. After the vehicle pulled over, did you approach the vehicle? A. I did.
> Q. Okay.  And you would have spoken to the driver, Kayleen Stallman?  A. That is correct.
> Q. Did you tell her about how she had crossed the center line? A. She told me, actually, how she had crossed the center line.
> . . . .
> Q. Did she tell you anything related to her present physical condition?  A. Yes.

Q. Okay. And what did she tell you in relation to her present physical condition at that time? [Defense objection, which was overruled.] A. She stated that she was tired.

Goodon asserts this final statement—"She stated that she was tired"—was inadmissible hearsay.

A present sense impression is an exception to hearsay. *Dessinger*, 958 N.W.2d at 600. "Present sense impression involves '[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it.'" *Id.* (alteration in original) (quoting Iowa R. Evid. 5.803(1)). "[T]he person must be providing a current description of the sensory impressions of an event rather than a mental process." *Id.* at 601.

The State explicitly asked Officer Boyle for Stallman's statements "related to her present physical condition" at the time of the stop. Officer Boyle responded with Stallman's statement "that she was tired." We agree this statement is a present sense impression and find no error in its admission.

### 3. Text messages

Finally, Goodon argues a series of conversations he had with Stallman via text message after his arrest contain inadmissible hearsay. In one conversation, Stallman discusses drug use:

I want to see the person you are sober. I want to be by your side in good times and in bad. But I have to make the choice to be straight or continue doing the same shit u have for the last 20 years. We could be great together sober. We just have to commit to doing it and being the people we need to be to be successful in life

You got crazy. I dont like the person u started to become. Some peopke can do the drug othera the drug does them. You are definitely one of those who lets the drug do u.

(Formatting altered for readability, all errors in original.) In another conversation, Stallman discussed responsibility for the traffic stop and Goodon's subsequent arrest: "I feel like ur blaming me for this I'm sorry I got us pulled over. I dint mean to go 3 mph over the speed limit. U act like I don't beat myself up everyday cuz of it."

The State argues—and the district court agreed—these statements by Stallman are admissible as adoptive admissions. *See* Iowa R. Evid. 5.801(d)(2)(B) (declaring a statement offered against a party is not hearsay if the statement "[i]s one the party manifested that it adopted or believed to be true").

> When hearsay accusations are sought to be introduced as evidence against a defendant in a criminal proceeding on grounds that the hearsay was "adopted" by defendant as an admission of his guilt, the trial court must first determine that the asserted adoptive admission be manifested by conduct or statements which are *unequivocal*, *positive*, and *definite* in nature, *clearly showing* that in fact defendant intended to adopt the hearsay statements as his own.

*State v. Beckett*, 383 N.W.2d 66, 69 (Iowa Ct. App. 1985) (quoting *Vill. of New Hope v. Duplessie*, 231 N.W.2d 548, 553 (Minn. 1975)). When the State asserts the defendant adopted the statement by silence or tacit admission, "tacit admissions should be received with caution" due to the ambiguity of silence. *State v. Paredes*, 775 N.W.2d 554, 570 (Iowa 2009).

Before ruling, the district court opined that admitting Stallman's text messages could be "problematic" because Goodon never makes "a direct acknowledgment that everything [she] just said is correct." Nevertheless, the court found Goodon's replies "in essence" adopted her statements. We need not decide whether the court's ruling was in error because, even if Stallman's text messages

were inadmissible hearsay, the messages were "substantially the same" as other evidence properly admitted into the record. *See Newell*, 710 N.W.2d at 19.

In the first exchange, Stallman asserts Goodon used an unnamed drug or drugs to his detriment. As explained above, the record is replete with evidence of Goodon's drug use. Notably, immediately before Stallman's text messages, Goodon acknowledges he has been "all methed out" around her and he is "a far better man when [he is] not high." In the second exchange, Stallman accepts blame for the traffic stop. However, the record contains video from the police vehicle immediately after the arrest, in which Goodon tells Stallman, "It's not your fault." Similarly, Goodon responded to Stallman's messages by stating, "I don't blame you for anything. This is not your fault. . . . Please baby know that I don't blame you for this." Thus, Goodon's own words in the record show Stallman felt at least some responsibility for the stop and Goodon attempted to minimize her responsibility. Because the substance of Stallman's text messages was already in the record, any error in their admission was harmless.

## IV. Conclusion

Any error in the admission of the field test results was harmless, and the out-of-court statements were either excepted from hearsay or substantially the same as other evidence in the record. Therefore, we affirm Goodon's conviction.

**AFFIRMED.**