227 So.2d 916

**STATE of Louisiana**

**v.**

**Steve BONFANTI, Jr.**

**No. 49892.**

Nov. 10, 1969.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Sargeant Pitcher, Jr., Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., for appellant.

Sam J. D'Amico, Davis A. Gueymard, David W. Robinson, Baton Rouge, for appellee.

HAMITER, Justice.

The defendant, Steve Bonfanti, Jr., was charged in an indictment (in the short form prescribed by Article 465 of the Code of Criminal Procedure) with the crime of ag-

gravated arson, in violation of LRS 14:51, relative to a structure located at 2302 Highland Road in Baton Rouge.

Following the state's response to a motion for a bill of particulars the accused moved to quash the indictment. The motion was sustained and the prosecution dismissed. The state is appealing from the judgment.

LRS 14:51, as amended, pertinently provides: "Aggravated arson is the intentional damaging by any explosive substance or the setting fire to any structure, watercraft, or movable, wherein it is foreseeable that human life might be endangered.

"Whoever commits the crime of aggravated arson shall be imprisoned at hard labor for not less than two nor more than twenty years. * * *"

In its answer to the motion for a bill of particulars the state said that the structure at 2302 Highland Road was an unoccupied building; that no other buildings were endangered by the defendant's act; and that the persons whose lives might have been imperiled as the result of the alleged arson were those of the firemen of the Baton Rouge Fire Department. (In the event of a trial the state would, of course, be limited in its proof to the recited facts. Hence, if they, taken in connection with the averments of the indictment, do not indicate the commission of the crime of aggravated arson the charge has to be quashed. State v. Bessar et al., 213 La. 299, 34 So.2d 785; State v. Picou, 236 La. 421, 107 So.2d 691 and State v. Mann, 250 La. 1086, 202 So.2d 259.)

It is the position of the state herein that "a human being of average reasonable intelligence and perception who sets a fire to a structure in a city such as Baton Rouge and a parish such as East Baton Rouge, would ordinarily anticipate the calling of the fire department to combat the fire and that such a task certainly might endanger human life of the combating firemen."

The defendant, on the other hand, argues that the legislative history of the aggravated arson statute suggests that it is designed to cover acts of setting fire to a building or moveable (whether owned by the actor or not) which is either occupied or so located that persons might be physically present in or near it when the fire commences and their lives endangered; and that it was not the intention of the legislature by the most recent enactments to enlarge coverage to those who might voluntarily come to the scene of the fire after it has been started.

■ We have concluded that the defendant's view of the statute is correct. Initially, the common law crime of arson was restricted to the burning of dwelling houses. Moreover, our early laws denounced the burning of public and private buildings, etc., and certain moveables, as well as those

structures in which some human beings usually stayed, lodged or resided; and they provided generally for lesser sentences for the former. Also, a distinction was made between arson in the daytime and that in the nighttime. See the Revised Statutes of 1870, Sections 841–848. However, by Act 263 of 1908 the distinction between daytime and nighttime arson was abandoned; all types of structures were included; and the requirement that humans stay, lodge or reside therein was changed so that the prohibition was against burning buildings, ships, etc., "in or on which human beings are customarily to be found."

Act 211 of 1928 denounced the burning of dwellings, etc., adjoining structures, and the setting fire to certain specific personal property. Meanwhile, special statutes and amendments to preexisting legislation brought the use of explosives within the purview of the arson law.

With that background, the legislature enacted Articles 51 and 52 of the Criminal Code of 1942. With the exception of one word, which will be hereinafter discussed, such Article 51 was the same as the present LRS 14:51. Article 52, which was identical to the now LRS 14:52, provided that simple arson "is the intentional damaging by any explosive substance or the setting fire to any property of another, without the consent of the owner and except as provided in Article 51 (aggravated arson)."

■ It is our opinion that by the enactment of Article 51 of the Criminal Code of 1942 the legislature did not intend to so enlarge the scope of preexisting legislation so as to include anticipation of injury to firemen or to others who might come to the site of the fire after its commencement. Rather, we think that it was intended to include the burning or blowing up of property when the actor foresees or anticipates the then presence of persons at the site, or in such close proximity thereto, so that their lives might be endangered by the act.

A very compelling reason for adhering to this interpretation of the now LRS 14:51 is that if we adopt the state's interpretation so as to include all of those who might foreseeably come to a fire after it has been started, for the purpose of extinguishing it, we would (for all practical purposes) render ineffective LRS 14:52. Because in virtually every case of intentional burning there is the possibility that someone will attempt to extinguish the conflagration and life will thereby be endangered. We cannot presume that the legislature, in enacting both of such provisions at one and the same time (and then reenacting them in the system of the Revised Statutes of 1950), intended one to be interpreted so as to render the other immediately inoperative.

Nor do we believe that the amending of LRS 14:51 by Act 117 of 1964 requires any other interpretation of the section. By that Act the word "whereby" was substi-

tuted for the word "wherein". This amendment was effected obviously because it was realized that it could possibly be argued that the word "wherein" might refer to the structure, watercraft or moveable. Replacing that word with "whereby" obviated such a construction inasmuch as it clearly referred to the act of burning, rather than to the property set afire. (We note, incidentally, that our interpretation of the effect of such amendment is concurred in by Dr. Dale E. Bennett in an article in 25 Louisiana Law Review 40. Therein he observes that a situation pointing up the need for such clarification was presented by the intentional burning of an unoccupied building which was located within a few feet of an occupied residence.)

The essence of aggravated arson as defined in LRS 14:51, as well as the former legislation dealing with the greater grade of arson, is the foreseeability of danger to human life. And the purpose to be served by the new article of the Code (now in the Revised Statutes) was to cover those situations in which such danger was foreseeable at the commencement of the fire because of the close proximity of persons to the object burned, even though they were not actually in or on it.

For the reasons assigned the judgment is affirmed.