## STATE OF CONNECTICUT *v.* KELLY MOYE
### (11690)

SHEA, DANNEHY, SANTANIELLO, CALLAHAN and F. FREEDMAN, Js.

Argued December 13, 1985—decision released April 15, 1986

*Edward J. Peters, Jr.,* with whom was *Anthony C. Polvino,* for the appellant (defendant).

*Elizabeth B. Leete,* special assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Mary Galvin,* assistant state's attorney, for the appellee (state).

CALLAHAN, J. After a trial to a jury, the defendant Kelly Moye was convicted of arson in the second degree in violation of General Statutes (Rev. to 1981) § 53a-112 (a),[1] and of conspiracy to commit arson in the

---

[1] General Statutes (Rev. to 1981) § 53a-112 (a) provides: "ARSON IN THE SECOND DEGREE: CLASS B FELONY. (a) A person is guilty of arson in the second degree when he starts a fire or causes an explosion: (1) With intent to destroy or damage a building, as defined in section 53a-100, (A) of another,

second degree in violation of General Statutes
§ 53a-48 (a).[2] He was sentenced by the court to serve
concurrent terms of imprisonment for a total effective
sentence of not less than two and one-half years nor
more than five years. He was also ordered to pay a fine
of $1000. From this judgment the defendant appeals,
claiming that the trial court erred: (1) in allowing a
statement which was only "witnessed" by the defend-
ant to be admitted into evidence as an adoptive admis-
sion; (2) in denying the defendant's motion for mistrial;
and (3) in denying the defendant's motion for acquit-
tal. We find no error.

From the evidence presented at trial, the jury could
reasonably have found the following facts: On Novem-
ber 8, 1980, a waitress at the Dutchess Diner in West
Haven saw the defendant and James Baker, who were
off-duty New Haven police officers, enter the diner at
1:40 a.m. When she brought them part of their order,
the defendant left through the front door. He returned
in three to five minutes, and both men left the diner
between 1:50 a.m. and 2 a.m. Four young adults, Mary
Ellen Reinwald, Marc Ierardi, Terri Steeves and James
Kiaunis, were also in the diner that morning until
shortly before 2 a.m. When the four left, they paused
on the street outside. At that time, Reinwald noticed
the defendant and Baker standing and talking in the
parking lot by a car which had the door on the driver's
side open. In the same row of the parking lot there was
another car approximately one space away. Baker then

---

or (B) whether his own or another's, to collect insurance for such loss; and
(2) such act subjects another person to substantial risk of bodily injury or
another building to a substantial risk of destruction or damage."

[2] General Statutes § 53a-48 (a) provides: "CONSPIRACY. RENUNCIATION.
(a) A person is guilty of conspiracy when, with intent that conduct con-
stituting a crime be performed, he agrees with one or more persons to
engage in or cause the performance of such conduct, and any one of them
commits an overt act in pursuance of such conspiracy."

walked to the diner and spoke to someone inside. At that point, the defendant called out, "Is everything okay?" Baker replied in the affirmative. The defendant, who was standing behind the car door, then moved one arm downward toward the open car. That movement was followed by a flash and smoke emanating from the car. The flash was in the middle of the windshield near the rear view mirror. Reinwald yelled to Ierardi, who was standing beside her, "There is a man in the back of the parking lot that just lit a car on fire." Ierardi and Kiaunis ran toward the car but the defendant displayed a police badge and told them that "it was a fuse fire, and that he would take care of it" and not to worry about it. Reinwald ran to her aunt's house, which was only six houses away, and her aunt called the police. Kiaunis and Ierardi attempted to put out the fire despite the defendant's protests. As they did so, Kiaunis saw a burning object fall from the area of the rear view mirror. It sparked when it fell and Kiaunis then noticed a bottle on the floor. The bottle, which was later recovered, was half full of gasoline. As Kiaunis and Ierardi tried to put out the fire, the flames seemed to get larger and Ierardi, fearing that the car would explode and endanger both himself and Kiaunis, kicked the door shut. Neither Baker nor the defendant appeared to do anything to put out the fire.

The intervention of Kiaunis and Ierardi led to a conflict with the defendant and Baker, which resulted in blows and obscenities being exchanged. Shortly afterward, the police and fire department arrived. Baker and the defendant identified themselves as police officers and made a complaint, which resulted in the arrest of Kiaunis and Ierardi. Fire Marshall Charles E. Raubeson examined the car and concluded that the fire had been intentionally set. Later that same morning the defendant and Baker went to West Haven police headquarters to make a statement in connection with

the arrests of Kiaunis and Ierardi. Both men told Officer Albert R. Lindblom of the West Haven police department their version of the incident and he wrote it down in statement form. Baker and the defendant both signed the statement.

## I

The defendant's first claim is that the trial court erred in permitting the statement, which he contends was signed by Baker and only "witnessed" by him, to be introduced into evidence in violation of his right to confront his accusers. The trial court found that the statement was admissible at the defendant's trial because the defendant had adopted it as his own. The trial court, when ruling on the admissibility of the evidence, stated: "It really is immaterial as to where on the paper the signatures appear, since the testimony of the officer is that both men fully adopted the statement as theirs, their own, and then signed at the bottom. Even if they hadn't signed, I think the statement could come in. He has adopted it, according to the testimony here, and I am going to allow it." We agree with the trial court.

"When a party's conduct indicates that the party assents to or adopts a statement made by another person, the statement is admissible against the party." Tait & LaPlante, Handbook of Connecticut Evidence (1976) § 11.5 (d) (6). " 'Where hearsay accusations are sought to be introduced as evidence against a defendant in a criminal proceeding on grounds that the hearsay was "adopted" by the defendant . . . the trial court must first determine that the asserted adoptive admission be manifested by conduct or statements which are *unequivocal, positive, and definite* in nature, *clearly showing* that in fact defendant intended to adopt the hearsay statements as his own.' (Emphasis in original.) *State Village of New Hope* v. *Duplessie,* 304 Minn. 417, 425, 231 N.W.2d 548 (1975)." *State* v. *Morrill,* 197 Conn. 507, 537, 498 A.2d 76 (1985).

Officer Lindblom testified that Baker and the defendant came to police headquarters, at his request, to make a statement concerning the arrest of Kiaunis and Ierardi. He testified further that, "I wrote out the statement myself as Baker told me the story. Baker and Moye both were relating the story as I was writing. . . . I asked both of them to read it, to make sure that this was what they told me. They both read it, and they both signed it." The defendant verbally indicated to Lindblom that he agreed with it. In the introductory part of the statement the name of James Baker appeared, and, at the bottom of the statement, it said, "Signed by James Baker." Where the defendant signed the statement, the print on the form indicated that he was signing as a witness. Lindblom testified that the defendant's signature appeared on the statement because "[h]e agreed with it, and like I said, he gave me some of the words to put into it." He also testified that "[m]ore or less this is a joint statement. They both contributed to what was put into the statement." "I asked them both, before they signed it, to read it and make sure that everything that they wanted in there was in there before they signed it, and that was the condition that they signed it."

The facts clearly support the trial court's determination that the defendant intended to adopt, as his own, the statement made at West Haven police headquarters and the trial court properly admitted it into evidence as an adoptive admission.

## II

The defendant's second claim is that the trial court erred in denying his motion for a mistrial. The initial basis for his claim is a remark made by the trial court when it overruled an objection to the admission of evidence offered by the state. In giving a reason for its ruling, the trial court said, "There is a charge of con-

spiracy here, counsel. The conspiracy has been established at least on a prima facie basis, at least in the opinion of this Court, and that permits this to come in . . . . '' There is no claim on appeal that the evidentiary ruling was incorrect. The defendant does claim, however, that it was improper for the trial court to rule upon the defendant's objection in the manner it did, in the presence of the jury, and that it denied him a fair trial.

The defendant did not make contemporaneous motions for a mistrial, to strike the remark or for a curative instruction. It was not until about forty-five minutes later in the trial, after another witness had testified, that the defendant made a motion for a mistrial based on the remark of the trial court. The trial court denied the defendant's motion but offered to include a curative instruction in its charge and invited the defendant to submit one. He did not do so. Further, the defendant did not take an exception to that portion of the charge which contained the trial court's curative instruction.

" 'The trial court has a wide discretion in passing on motions for mistrial.' *State* v. *Savage,* 161 Conn. 445, 449, 290 A.2d 221 [1971]." *State* v. *Brown,* 169 Conn. 692, 703, 364 A.2d 186 (1975). " 'The general principle is that a mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial.' *State* v. *Turcio,* 178 Conn. 116, 143, 422 A.2d 749 (1979)." *State* v. *Gooch,* 186 Conn. 17, 25, 438 A.2d 867 (1982). The narrow issue on appeal is whether the trial court abused its discretion. *State* v. *Vass,* 191 Conn. 604, 613, 469 A.2d 767 (1983). "[W]e have consistently recognized that a careful, cautionary instruction given by the trial court is a relevant factor to be considered in determining whether the denial of such a motion constituted an abuse of the trial court's

broad discretion. See *State* v. *Ruiz,* 171 Conn. 264, 274, 368 A.2d 222 [1976]; *State* v. *Savage,* supra, 448–49; *State* v. *Miller,* 154 Conn. 622, 631, 228 A.2d 136 [1967]." *State* v. *Piskorski,* 177 Conn. 677, 720, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979).

Even if we assume that the articulation of a correct ruling on evidence can be ground for a mistrial, to determine on appeal that it was error to deny the defendant's motion, would, under the circumstances, amount to an ambush of the trial judge. The court gave a curative instruction couched in general terms to avoid undue emphasis on its remark. The defendant, aware that this was the course to be followed, neither submitted a request to charge nor took exception to the court's charge on this point. He cannot now be heard to complain that the trial court failed to cure any prejudice caused by its remark. See *State* v. *Ferraro,* 164 Conn. 103, 109, 318 A.2d 80 (1972).

Further, the charge made it clear that the jury during its deliberations was not to consider the action of the trial court in ruling on the admissibility of evidence, that it should consider only the evidence admitted and that proof beyond a reasonable doubt, not prima facie evidence, was required to find the defendant guilty. The jury is presumed, in the absence of an indication to the contrary, to have followed the instructions of the trial court. *State* v. *Bausman,* 162 Conn. 308, 314, 294 A.2d 312 (1972). Also there was ample evidence of a conspiracy. The defendant was not deprived of a fair trial by the trial court's ruling and the denial of his motion for a mistrial did not constitute an abuse of discretion.

The defendant additionally asserts that his motion for a mistrial should have been granted because the trial court erroneously led the jury to believe that the defense had conceded that the fire was incendiary in

origin. The defendant failed to raise this claim when he moved for a mistrial. The sole discernible basis for his motion for a mistrial was the trial court's remark, previously discussed, concerning a prima facie case being made with respect to conspiracy. The defendant claims, however, he is entitled to review of this additional issue because it deprived him of a fair trial.

During the course of the trial, a question by defense counsel on cross-examination prompted the trial court to ask, "Are you saying there was some kind of spontaneous fire here? I thought a little while ago you admitted it was an incendiary fire, with the last witness." Defense counsel responded, "I am not claiming anything." He voiced no objection nor did he address any motion to the court's query.

We will not consider claimed errors on the part of the trial court unless the question was distinctly raised at trial and was ruled upon and decided by the trial court adversely to the appellant's claim. Practice Book § 3063; *State* v. *Evans,* 165 Conn. 61, 67, 327 A.2d 576 (1973). We will depart from that practice in this case only if the record adequately supports a claim that the defendant has clearly been deprived of a fundamental constitutional right and a fair trial. *State* v. *Evans,* supra, 70.

It appears from the record that the origin of the fire was not seriously contested at trial. Without objection and without exception, the trial court, in its charge at the conclusion of the evidence, instructed the jury that there were "certain facts that were admitted or at least not contested," one of which was "that the fire causing damage was incendiary in origin." Since the issue of the origin of the fire was not a contested issue, it is difficult to understand how the court's inquiry deprived the defendant of a fair trial. Accordingly, it is unnecessary to review further this portion of the defendant's claim.

## III

The defendant's final claim is that the court erred in denying his motion for judgment of acquittal. The defendant argues that insufficient evidence was presented to allow a conclusion that the defendant's act subjected "another person to substantial risk of bodily injury or another building to substantial risk of destruction or damage" which is an element of the crime of arson in the second degree. The state must prove each element of the crime beyond a reasonable doubt. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The defendant admits that the jury could reasonably have found from the evidence that the other elements of arson in the second degree were proven beyond a reasonable doubt. The record discloses that there was also sufficient evidence to allow the jury to find, proven beyond a reasonable doubt, that the fire started by the defendant subjected "another person to a substantial risk of bodily injury or another building to substantial risk of destruction or damage." General Statutes (Rev. to 1981) § 53a-112. An automobile is included in the definition of a "building" for the purposes of General Statutes § 53a-112. *State* v. *Baker,* 195 Conn. 598, 603, 489 A.2d 1041 (1985). Fire Marshall Raubeson testified that opening the car door would let in oxygen, which would generate gasoline vapors, which would ignite and cause a burst of flames. If the fire had continued to burn, a second explosion might have resulted. This explosion could have damaged another car which was parked only one space away and could have injured Kiaunis, who was attempting to put out the fire.

"Liability is not predicated on how far the fire spreads before being extinguished; the statute looks only to the moment the fire was set to determine the criminality of the act." *State* v. *Parmalee,* 197 Conn. 158, 162, 496 A.2d 186 (1985). "Thus, even though the fire was put out before it could reach its full potential and ultimately posed no actual danger to surrounding buildings [or persons], the act of setting the fire placed [persons and] another building at 'substantial risk' within the meaning of § 53a-112." Id. The jury could certainly have reasonably concluded from the evidence before them that the fire posed a substantial risk of bodily injury to another person or damage to another vehicle. The trial court did not err in denying the defendant's motion for acquittal.

There is no error.

In this opinion the other judges concurred.