Steven Scott COPELAND, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 98SC756.

Supreme Court of Colorado,
En Banc.

May 30, 2000.

As Modified on Denial
of Rehearing June 12, 2000.*

---

* Justice MARTINEZ and Justice BENDER would grant the petition.

David Kaplan, Colorado State Public Defender, Katherine Brien, Deputy State Public Defender, Denver, Colorado, Attorneys, for Petitioner.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Alan J. Gilbert, Solicitor General, Robert Mark Russel, First Assistant Attorney General, Eric V. Field, Special Assistant Attorney General, Criminal Enforcement Section, Julia A. Thomas, Assistant Attorney General, Appellate Division, Denver, Colorado, Attorneys for Respondent.

Justice HOBBS delivered the Opinion of the Court.

Colorado's fourth degree arson statute provides that a person who "knowingly or recklessly starts or maintains a fire ... on his own property or that of another, and by

so doing places another in danger of death or serious bodily injury" commits a felony. § 18–4–105, 6 C.R.S. (1999). We granted certiorari to determine whether the mens rea requirement of this statute applies to the phrase "and by so doing places another in danger of death or serious bodily injury." [1] We agree with the trial court and the court of appeals that it does not. Accordingly, we uphold the judgment of the court of appeals affirming the conviction of Steven Scott Copeland (Copeland). *See People v. Copeland,* 976 P.2d 334 (Colo.App.1998).

I.

In the early morning hours of May 1, 1996, a witness observed a person setting fire to a Porsche within a fenced-in car lot at a repair shop in Colorado Springs. Firefighters responded. They allowed the Porsche to continue burning because water can interact with the magnesium in a Porsche's engine block to intensify the fire and cause metal slag to fly into the air. The fire also damaged two nearby vehicles. The Porsche belonged to Poppy Miller (Miller). On the same night as the fire, someone slashed the tires of Miller's Jeep, which was parked in front of her home.

At trial, Miller testified that Copeland had been a guest in her home the previous summer. Miller asked him to leave following an altercation during which he threatened her. Witnesses placed Copeland at the scene of the fire, and an evidentiary expert matched a knife found in his pocket the night of his arrest with the cuts on the tires of Miller's Jeep. Another witness said Copeland told her on the night of the fire that he needed to leave town because he had just "torched" a Porsche.

The trial court delivered the standard jury instruction for fourth degree arson.[2] During

---

1. We granted certiorari on the following issue: Whether the court of appeals erred in concluding that the district court did not commit reversible error by instructing the jury that the *mens rea* set forth in § 18–4–105, 6 C.R.S. (1998), does not apply to the fifth element of the offense which states as follows: "and by so doing places another in danger of death or serious bodily injury."

2. The charge submitted to the jury in Instruction No. 12 reiterated the applicable statutory language of § 18–4–105:

    The elements of the crime of fourth degree arson are:
    1. That the defendant
    2. in the state of Colorado, at or about the date and place charged,

deliberations, the jury sent the following inquiry to the court:

> In the 4th degree arson charge does the clause "knowingly or recklessly" apply only to the 3rd element or do the words "by doing so" in the 5th element imply that they apply there also. Therefore that would mean that the person would have to knowingly or recklessly put people in danger of death or serious bodily injury.

In response, the court replied that the words, "knowingly or recklessly," applied to the third element listed in Instruction 12.[3]

The jury subsequently found Copeland guilty of two class four felonies: second degree arson, section 18–4–103(1), 6 C.R.S. (1996), and fourth degree arson, section 18–4–105(2), 6 C.R.S. (1996). In addition, the court found Copeland guilty of six habitual criminal counts under section 16–13–101, 6 C.R.S. (1996), and sentenced him to twenty-four years on each of the first two counts, the sentences to run concurrently. Copeland appealed. The court of appeals held that the trial court did not err in its comment to the jury regarding the fourth degree arson instruction. We agree. We reject Copeland's argument that the legislature intended to apply the mens rea requirement to the statute's endangerment provisions.

## II.

We hold that the mens rea requirement of the fourth degree arson statute, knowingly or recklessly, does not apply to the statute's endangerment provisions.

### A. Construction of Fourth Degree Arson Statute

The common law defined arson as the "wilful and malicious burning of the dwelling house of another." *See* vol. 3, Charles E. Torca, *Wharton's Criminal Law* § 337, at 330–31 (15th ed.1995). The rationale for punishment focused on the "contempt for human life" that the offense displayed. Consequently, arson was usually punished as a

felony. *See id.* § 337, at 325. At common law, "every burning" was presumed accidental, thus the burden was on the prosecution to show that it was "wilful and malicious." *Id.* § 337, at 331. The requisite mental state could be inferred from the "attendant circumstances, from prior threats or quarrels, or from prior burnings or prior attempts to burn." *Id.* § 337, at 331–32.

In 1971, Colorado enacted its fourth degree arson statute. *See* ch. 121, art. 4, § 40–4–105, 1971 Sess. Laws 382, 426. The statute punished arson endangering a person as a felony, and arson endangering only property as a misdemeanor:

> Fourth degree arson. (1) *A person who starts or maintains a fire* or causes an explosion on his own property or that of another, *and by so doing places another in danger of death or serious bodily injury* or places any building or occupied structure of another in danger of damage, commits fourth degree arson. (2) *Fourth degree arson is a class 4 felony if a person is thus endangered.* (3) Fourth degree arson is a class 2 misdemeanor if only property is thus endangered and the value of the property is one hundred dollars or more. (4) Fourth degree arson is a class 3 misdemeanor if only property is thus endangered and the value of such property is less than one hundred dollars.

*See id.* (emphasis added).

Based on this wording, we held that fourth degree arson was a strict liability crime because the statute, as enacted in 1971, did not require a culpable mental state. *See People v. Garcia,* 189 Colo. 347, 351, 541 P.2d 687, 690 (1975). In 1977, the General Assembly amended the statute to insert the words "knowingly or recklessly" between the words "who" and "starts or maintains a fire." This is the only change the legislature has made to the fourth degree arson statute. *See* § 18–4–105, 6 C.R.S. (1999).

---

3.  knowingly or recklessly, started or maintained a fire,

4.  on his own property or that of another, and

5.  by doing so placed another person in danger of death or serious bodily injury.

**3.** The court responded over defense objection, "Applies to number 3."

■ The power to define criminal conduct and to establish the legal components of criminal liability is vested in the General Assembly. *See* Colo. Const. art. V, § 1; *Rowe v. People,* 856 P.2d 486, 490 (Colo. 1993). In construing a statute, we give effect to the intent of the General Assembly whenever possible. *See People v. Williams,* 984 P.2d 56, 61 (Colo.1999). With the exception of strict liability crimes, a person is not subject to criminal sanctions unless the prosecution establishes that, in addition to committing a proscribed act, the person acted with the culpable mental state required for the particular crime. *See People v. Hall,* 999 P.2d 207, 216 (Colo.2000).

Elements of a particular offense may have differing mens rea requirements. Section 18–1–503 provides that:

> (4) When a statute defining an offense prescribes as an element thereof a specified culpable mental state, that mental state is deemed to apply to every element of the offense *unless an intent to limit its application clearly appears.*

§ 18–1–503, 6 C.R.S. (1999) (emphasis added); *see also* Wayne LaFave & Austin Scott, Criminal Law § 3.4(7) (2nd ed.1986).

In this case, we must determine whether the General Assembly intended by its 1977 amendment to apply the mens rea requirement to the endangerment provisions of the fourth degree arson statute. After the 1977 amendment, in comparing the fourth degree arson statute to the incendiary device statute, we said:

> The mental state required for fourth degree arson is that the fire or explosion be started or maintained knowingly or recklessly. The prosecution need not prove intent to endanger the person or building. *See People v. Garcia,* 189 Colo. 347, 541 P.2d 687 (1975).

*People v. Owens,* 670 P.2d 1233, 1237 (Colo. 1983).

■ We adhere to our interpretation of the fourth degree arson statute. The mens rea of a statute may speak to conduct, or to circumstances, or to result, or to any combination thereof, but not necessarily to all three. *See* Model Penal Code § 2.02 (1999);

*People v. Baca,* 852 P.2d 1302, 1305 (Colo. App.1992). Prior to and after the 1977 amendment, the General Assembly employed the statutory language, "and by so doing places another in danger of death or serious bodily injury" and "fourth degree arson is a class 4 felony if a person is thus endangered," to differentiate the result of the arson from the conduct of "starting or maintaining" the fire. *See* ch. 224, sec. 21, § 18–4–105, 1977 Sess. Laws. 959, 962–63; ch. 121, art. 4, § 40–4–105, 1971 Sess. Laws 382, 426. The effect of the 1977 amendment was to enunciate the culpability requirement for the conduct portion of the statute, while continuing to hold the arsonist criminally responsible for the endangerment of persons and property that may ensue.

We have recognized that "[a]lthough this distinction between an awareness of one's conduct or circumstance, on the one hand, and an awareness of the result of one's conduct, on the other, at times may be a subtle one, it is a distinction recognized by the Colorado Criminal Code itself." *People v. Noble,* 635 P.2d 203, 210 (Colo.1981). We held in *Garcia* that the fourth degree arson statute gives defendants and juries a practical guideline for acceptable behavior, and that fires started accidentally are excluded from the scope of criminal culpability. *See Garcia,* 189 Colo. at 351–52, 541 P.2d at 689–90 (holding that a voluntary act is required for criminal liability under the fourth degree arson statute and rejecting argument that the statute was unconstitutionally vague or overbroad).

The issue is whether the General Assembly intended to apply any mens rea requirement to the statute's endangerment provisions. We conclude that its retention in 1977 of the phraseology "and by so doing" demonstrates the legislature's intent to hold the arsonist responsible for the fire's result, regardless of the arsonist's awareness of the fire's danger to other persons or property. In contrast to the General Assembly's choice is the Model Penal Code's recommendation to insert a mens rea requirement into both the conduct and the endangerment provisions for offenses similar to our fourth degree arson statute, as follows:

A person commits a felony of the third degree if he *purposely starts a fire* or causes an explosion, whether on his own property or that of another's, *and thereby recklessly:*

(a) places another person in danger of death or bodily injury; or

(b) places a building or occupied structure of another in danger of damage or destruction.

Model Penal Code § 2.02(2)(a) (1999) (emphasis added). New Jersey is an example of a state that has followed this approach. N.J.S.A. 2C:17–1b provides that "A person is guilty of arson, a crime of the third degree, if he purposely starts a fire or causes an explosion, whether on his own property or another's: (1) *Thereby recklessly* placing another person in danger of death or bodily injury; or (2) *Thereby recklessly* placing a building or structure of another in danger of damage or destruction." (Emphasis added.) *See State v. M.N.,* 267 N.J.Super. 482, 631 A.2d 1267 (1993).

Because the "control of fire is a matter of great public concern," *see Garcia,* 189 Colo. at 351, 541 P.2d at 690, our legislature has chosen to draft the statute differently. It has determined to focus its fourth degree arson mens rea requirement on the actor's conduct in starting or maintaining the fire, while continuing to hold the arsonist responsible for the fire's result, whether· or not he or she was aware of or intended the consequences. *See Owens,* 670 P.2d at 1237; *see also State v. Moye,* 199 Conn. 389, 507 A.2d 1001, 1006 (1986) (stating that "[l]iability is not predicated on how far the fire spreads before being extinguished; the statute looks only to the moment the fire was set to determine the criminality of the act.... Thus, even though the fire was put out before it could reach its full potential and ultimately posed no actual danger to surrounding build-

ings or persons, the act of setting the fire placed persons and another building at 'substantial risk' within the meaning of" the Connecticut arson statute) (citations omitted).

Knowingly or recklessly starting a car fire that places another person in danger of death or serious bodily injury satisfies the elements of a felony offense under Colorado's fourth degree arson statute. *See* § 18–4–105(2). Car fluids are flammable and may explode, endangering property and persons. *See, e.g., People v. Macauley,* 73 Cal.App.4th 704, 86 Cal.Rptr.2d 675, 678 (1999) (describing witness testimony that "car fires are inherently dangerous because they can get out of control very quickly and the flammable liquids create a risk of explosion").

Firefighters are within the meaning of "persons" for purposes of the felony endangerment provision of the fourth degree arson statute. *See People v. Johnson,* 757 P.2d 1098, 1100 (Colo.App.1988).[4] Many other jurisdictions also follow this rule. *See, e.g., Alexander v. State,* 600 N.E.2d 549, 553 (Ind.App.1992); *State v. Millstein,* 8 Conn. App. 581, 513 A.2d 1253, 1261 (1986); *State v. Caprio,* 477 A.2d 67, 70 (R.I.1984). *But see State v. Bonfanti,* 254 La. 877, 227 So.2d 916, 918 (1969) (holding that "human life," within the context of Louisiana's precedent, does not include firefighters).

Proof at trial showed that Copeland knowingly set a car on fire and that persons, the responding firefighters, were subsequently endangered. Such proof is sufficient to support a conviction for fourth degree arson. We now consider the trial court's clarification of the standard fourth degree arson instruction delivered to the jury.

### B. Jury Question and Trial Court Response

In submitting this case to the jury, the trial court employed the standard in-

---

4. We construe statutes as a whole, giving consistent, harmonious, and sensible effect to all of its parts, whenever possible. *See Cooper v. People,* 973 P.2d 1234, 1239 (Colo.1999). In the fourth degree arson statute, our legislature requires the arsonist's actions to endanger "another" before felony liability may attach. The legislature's exclusion of the arsonist from the scope of the statute sharply contrasts with its inclusion of all

other natural persons. *Compare* § 18–4–105(1) *with Tennessee v. Nelson,* 1999 WL 58606 (Tenn. Crim.App.) (appeal pending) (defendant may be convicted of aggravated arson, requiring risk of serious bodily injury, even though the sole injury was the arsonist's, because the wording and context of the Tennessee statute permits such construction).

struction for fourth degree arson. *See* CJI–Crim. 13:06. This instruction mirrors the statutory language. Absent evidence to the contrary, we presume that the jury understood and heeded the trial court's instructions. *See Leonardo v. People*, 728 P.2d 1252, 1255 (Colo.1986).

■■ In response to the jury's inquiry during deliberations regarding whether the "knowingly or recklessly" part of the instruction applied to the endangerment provision, the trial court, over Copeland's objection, correctly said that it did not. Despite some confusion early in the proceedings,[5] the fourth degree arson statute did not require the prosecution to prove Copeland's awareness of special or unique circumstances that made this car fire particularly dangerous. A person who knowingly or recklessly starts or maintains a car fire is subject to conviction as a felon if that conduct "places another in danger of death or serious bodily injury." § 18–4–105(1), (2). The jury had before it proof that firefighters responded to the fire Copeland started and were endangered. This was sufficient to support the endangerment element of the offense.

Given the facts of the case, it is logical that the jury sought to have the trial court clarify whether Copeland had to know that a Porsche fire is particularly dangerous, because of the vehicle's magnesium engine block and its reaction to fire and water. The trial court soundly determined not to comment on the facts before the jury but, rather, to clarify the applicability of the mens rea requirement to the different elements of the offense.

■■ Regarding whether a trial court should provide a jury with additional instructions that properly state the law, Colorado follows the test articulated by the American Bar Association (ABA) Standards for Crimi-

nal Justice. *See People v. Shields*, 822 P.2d 15, 21 (Colo.1991); *Leonardo v. People*, 728 P.2d at 1255; ABA Standards for Criminal Justice, Standard 15–5.3(a) (2nd ed.1980). The Commentary to Standard 15–5.3 states that a "court should give additional instructions whenever such action is needed to answer a proper question from the jury." *See* ABA Standard 15–5.3 (Commentary).

Thus, when needed to answer a proper jury question, an additional instruction should be provided unless: (1) the jurors can be adequately informed by directing their attention to some portion of the original instructions; (2) the request concerns matters not in evidence or does not pertain to the law of the case; or (3) the request would call upon the judge to express an opinion upon factual matters that the jury should determine. In *Leonardo*, for example, we held that the question posed by the jury "demonstrated a fundamental misunderstanding" of the instructions, thus warranting clarification and re-instruction. *Leonardo*, 728 P.2d at 1255. *See also Shields*, 822 P.2d at 21; *Sanchez v. People*, 820 P.2d 1103, 1106–07 (Colo. 1991); *People v. Alexis*, 806 P.2d 929, 931–32 (Colo.1991).

The trial court here determined that the jury's inquiry was not capable of being answered by a referral back to the instructions, nor was it off-topic or inappropriate. The jury was concerned with a legal question, the answer to which was not readily apparent in the original instructions. Under the applicable standard, the trial court responded appropriately to the jury's question.

### III.

Accordingly, we affirm the judgment of the court of appeals.[6]

Justice MARTINEZ dissents.

---

5. At the pretrial probable cause hearing, the trial court stated that: "for purposes of this preliminary hearing, the Court is going to determine that there was a risk of death or injury to the firefighters that responded to this fire; specifically, *that extra risk caused by the— created by the magnesium block of the Porsche* that pops and shoots out hot stuff when hit with water to cool it." (Emphasis added.) This was an unneces-

sarily narrow view of the endangerment provisions of the fourth degree arson statute.

6. On petition for rehearing, Copeland argues that the fourth degree arson statute is facially vague and overbroad in light of the court's decision regarding the intent and effect of the General Assembly's 1977 amendment. We express no opinion in this regard because the facial invalidi-

Justice MARTINEZ dissenting:

I agree with the majority's holding that it was appropriate for the trial court to respond to the jury's question in this case. I further agree with the majority's conclusion that firefighters fall within the meaning of "persons" under the fourth degree arson statute. However, I disagree with the majority's construction of Colorado's fourth degree arson statute as not applying the mens rea requirement to the element of placing another in danger of death or serious bodily injury. In my view, the majority misconstrues the pertinent statutory provisions and misapplies our precedent. I would hold that the pertinent statutory provisions require that we apply the mens rea requirement to the endangerment element in this case. Consequently, I would reverse the judgment of the court of appeals. Accordingly, I respectfully dissent.

I.

The fourth degree arson statute in effect at the time of the offense in this case provides as follows:

**Fourth degree arson.** (1) A person who *knowingly or recklessly starts or maintains a fire* or causes an explosion, on his own property or that of another, *and by so doing places another in danger of death or serious bodily injury* or places any building or occupied structure of another in danger of damage commits fourth degree arson.

(2) Fourth degree arson is a class 4 felony if a person is thus endangered.

(3) Fourth degree arson is a class 2 misdemeanor if only property is thus endangered and the value of the property is one hundred dollars or more.

(4) Fourth degree arson is a class 3 misdemeanor if only property is thus endangered and the value of such property is less than one hundred dollars.

§ 18–4–105, 6 C.R.S. (1999) (emphasis added). Under the majority's construction of this statute, "the mens rea requirement of the fourth degree arson statute, knowingly or

ty of the statute was not before the district court

recklessly, does not apply to the statute's endangerment provisions." Maj. op. at 1285.

Directing the interpretation of mens rea requirements throughout the criminal code, section 18–1–503(4), 6 C.R.S. (1999), provides that the mens rea applies to every element unless the contrary is clearly expressed. The statute reads:

When a statute defining an offense prescribes as an element thereof a specified culpable mental state, that mental state is deemed to apply to every element of the offense unless an intent to limit its application clearly appears.

§ 18–1–503(4). Although the majority cites section 18–1–503(4), it does not apply the mandate of section 18–1–503(4).

As interpreted by the majority, this provision instructs us to "determine whether the General Assembly intended by its 1977 amendment to apply the mens rea requirement to the endangerment provisions of the fourth degree arson statute." Maj. op. at 1286. As the majority observes, in 1977 the General Assembly added the criminal intent requirement to the previous version of the fourth degree arson statute. *See id.* at 1286. Six years earlier, the General Assembly enacted section 18–1–503(4), directing how the mens rea provisions of the forth degree arson statute, and the rest of the criminal code, should be interpreted. *See* ch. 121, sec. 1, § 40–1–603(4), 1971 Colo. Sess. Laws 388, 404.

The direction of section 18–1–503(4) makes our inquiry significantly different than the majority indicates. Our proper inquiry is whether an intent to limit the application of the mens rea requirement clearly appears in the statute. Absent a clear intent to limit in the fourth degree arson statute, it is our obligation to deem the mental state to apply to every element of the offense.

The majority observes that the Model Penal Code contains recommended language for clearly expressing intent to apply a mens rea requirement to all elements of an offense. *See* maj. op. at 1287 (citing Model Penal Code § 2.02(2)(a) (1999)). Had the General Assembly followed this recommendation, it

or us in this case.

would have expressed a clear intent to apply "knowingly or recklessly" to the endangerment element of the fourth degree arson statute. However, the issue is not whether the statute expresses a clear intent to apply the mens rea requirement to all the elements of the offense, but rather, whether the statute as written expresses a clear intent to limit the application of the mens rea requirement. The selection by the legislature of ambiguous language hardly expresses such an intent, thus requiring us to follow section 18–1–503(4) and deem the mens rea to apply to every element.

As currently written, the fourth degree arson statute does not indicate a clear intent to limit the mens rea requirement to the first element of the offense. The subject of the sentence, "[a] person," is the same for the verbs "starts or maintains" and "places." Separated by the conjunctive phrase "and by so doing," all of these verbs may reasonably be interpreted as modified by the adverbs "knowingly" and "recklessly." On the other hand, the result reached by the majority is ultimately dependent on viewing the conjunctive phrase "and by so doing" as expressing a clear intent to limit the adverbs "knowingly" and "recklessly" to the first set of verbs. See maj. op. at 1286. I do not view either interpretation of the effect of "and by so doing" as particularly compelling. This ambiguity in the wording of the fourth degree arson statute hardly constitutes the clear intent required by section 18–1–503(4) to limit the application of the mens rea requirement.

The language and structure of the instruction given to the jury in this case repeated the statutory language.[1] Specifically, the instruction included the conjunctive phrase "and by doing so," similar to that relied on by the majority as a clear expression of the mens rea requirement. Ironically, the jury found this language ambiguous and asked whether the mens rea applied to all the elements.

In further support of its conclusion that "knowingly or recklessly" does not apply to the endangerment element of fourth degree arson, the majority relies on the interpretation proffered in *People v. Owens,* 670 P.2d 1233, 1238 (Colo.1983). *See* maj. op. at 1286. For several reasons I believe that the majority's reliance on *Owens* is misplaced.

The resolution of the issue in *Owens* required an analysis of the mens rea requirement in the fourth degree arson statute. *See Owens,* 670 P.2d at 1238. However, we did not decide in *Owens* whether the mens rea requirement applied to the endangerment element of fourth degree arson. *See id.* Instead the issue before us was whether the incendiary device statute, section 18–12–109(4), 6 C.R.S. (1999), violated equal protection by punishing more severely conduct that was also punished by the arson statutes. *See Owens,* 670 P.2d at 1238. In holding that the incendiary provisions did not violate equal protection, we distinguished the two statutes, in part, by noting the mens rea requirements. *See id.*

Further, the mens rea analysis in *Owens* relied on *People v. Garcia,* 189 Colo. 347, 541 P.2d 687 (1975). *See Owens,* 670 P.2d at 1238. The *Garcia* decision precedes the amendments imposing the mens rea requirement of "knowingly or recklessly" and does not support an analysis of whether the mens rea applies to the endangerment element of the fourth degree arson. Thus, to any extent that *Owens* can be read as addressing the mens rea requirement of the current fourth degree arson statute, I would disapprove of the case.

Finally, I observe that the consequence of the interpretation given to the fourth degree arson statute by the majority is to create a broad statute covering seemingly innocent behavior. For example, any person starting a fire in her fireplace, without perceiving a risk of danger to person or property, would

---

1. Instruction No. 12, as submitted to the jury at trial, read:

   The elements of the crime of fourth degree arson are:
   1. That the defendant,
   2. in the state of Colorado, at or about the date and place charged,
   3. knowingly or recklessly, started or maintained a fire,
   4. on his own property or that of another, and
   5. by doing so places another person in danger of death or serious bodily injury.

nonetheless be criminally liable for a class four felony if the fire endangered any person.[2]

As I interpret the statute, however, knowingly starting a fire would come under the prohibition of the fourth degree arson statute only if the actor was aware that starting or maintaining the fire "was practically certain to cause" danger to life or property.[3] Similarly, recklessly starting a fire would come under the prohibitions of the fourth degree arson statute only if the actor "consciously disregards a substantial and unjustifiable risk that" the fire would endanger life or property.[4]

## II.

In conclusion, the plain language of the fourth degree arson statute does not evidence a clear intent to limit the mens rea requirement of "knowingly or recklessly." Absent such a clear intent, we must construe the mens rea requirement as applying to all elements of the offense, including the endangerment element of this offense in particular. Therefore, I respectfully dissent.

Justice COATS does not participate.

2. Copeland argues in his petition for rehearing that the majority's interpretation renders the statute unconstitutionally vague and overbroad. He also claims that the interpretation causes an equal protection problem. In a footnote added when the petition for rehearing was denied, the majority declines to consider how any constitutional concerns might affect their interpretation of the statute because Copeland raised those concerns for the first time in the petition for rehearing. See maj. op. at 1288 n. 6. While I would grant the petition for rehearing, I do not reach any constitutional issues because my interpretation of the statute does not give rise to the possible constitutional problems Copeland now addresses.

3. Section 18–1–501(6), 6 C.R.S. (1999), defines the mental state of "knowingly" as:

> All offenses defined in this code in which the mental culpability requirement is expressed as "knowingly" ... are declared to be general intent crimes.... A person acts "knowingly" ... with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result.

4. With regard to recklessly, section 18–1–501(8) provides:

> A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists.