23CA1002 Peo v Johnson 12-11-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1002
Jefferson County District Court No. 22CR328
Honorable Philip J. McNulty, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Joshua Levi Johnson,

Defendant-Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE TOW
Moultrie and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 11, 2025

---

Philip J. Weiser, Attorney General, Brenna A. Brackett, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kira L. Suyeishi, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Defendant, Joshua Levi Johnson, appeals the judgment of conviction entered after a jury found him guilty of attempted second degree murder, second degree kidnapping, second degree assault, third degree assault, menacing, and criminal mischief. We reverse Johnson's second degree kidnapping conviction and remand the case to the district court for further proceedings consistent with this opinion. We otherwise affirm the judgment.

## I.     Background

¶ 2     At trial, the prosecution presented evidence from which the jury could find the following:

¶ 3     Johnson and Jacqueline Ramquist had been dating for a few months and were living together at her apartment. One morning, after staying up all night "partying and drinking," they began to argue. The argument turned physical when Johnson "backhanded" Ramquist in the face.

¶ 4     Over the next two hours, Johnson continued to assault Ramquist. During that time, Ramquist estimated that Johnson strangled her approximately ten times; she lost consciousness each time. At one point, Ramquist attempted to get up and leave the apartment, but Johnson pulled her back from the front door by her

1

waist and dragged her ten feet into the bedroom, where he continued to strangle and assault her.

¶ 5 In the bedroom, Johnson held a kitchen knife against Ramquist's neck and later, put a plastic bag over her head for a few seconds while she was regaining consciousness. Eventually, Ramquist feigned unconsciousness, Johnson picked her up and "threw" her on the bed, and they both fell asleep. When Ramquist woke up, Johnson was still asleep. She left the apartment and drove herself to the hospital.

¶ 6 Johnson defended against Ramquist's allegations by asserting that he "did not assault [her], he did not strangle her, and he certainly did not try to murder her." In support of his theory of defense, he presented evidence from a forensic medical examination and strangulation expert who reviewed the police reports and the forensic nurse examiner's records and opined that "one can neither confirm nor refute that [strangulation] took place." The expert also testified to the lack of bruises on Ramquist's neck. Johnson also presented testimony from the emergency room doctor who treated Ramquist. The doctor testified that he did not observe any "hard signs" of strangulation, such as bruising or swelling, and

Ramquist's CT scan and CT angiogram returned normal results with "[n]o evidence of injury."

¶ 7 The jury found Johnson guilty of the lesser included offenses of attempted second degree murder and misdemeanor menacing but otherwise found him guilty as charged. The district court imposed a controlling sentence of fifteen years in the custody of the Department of Corrections for attempted second degree murder, with shorter concurrent sentences on the remaining convictions.

## II. Discussion

¶ 8 On appeal, Johnson contends that (1) the prosecutor committed misconduct during voir dire and closing argument and (2) the district court incorrectly instructed the jury on the meaning of the "one place to another" element of second degree kidnapping. We address each contention in turn.

### A. Prosecutorial Misconduct

¶ 9 Johnson's prosecutorial misconduct claim rests on the premise that, during voir dire and closing argument, the prosecutor explained the concept of "substantial step" by analogizing to a fictional crime of attempt to bring coffee into the courtroom. We discern no misconduct.

¶ 10 During voir dire, the prosecutor introduced the concept of criminal attempt liability to the prospective jurors by asking them the following: "if it was a crime for me to bring my coffee into the courtroom this morning, do you think I would have committed the crime of attempting to do so by making it, putting it in a cup, [and] putting it on the countertop?" The prosecutor discussed the analogy with a couple of prospective jurors and then modified it and asked the jurors what additional evidence they would be looking for to find her guilty of the fictional crime:

> What if I put someone on the stand and that person, for example, my partner, who lives at home with me, what if he told you, [I] said, before [I] left the house today, that [I] was going to drink this coffee in the courtroom, how would you feel then?

Later in voir dire, the prosecutor returned to the analogy:

> So then, in this particular scenario, for example, maybe me on video saying that I was going to bring it into the courtroom, would that carry some additional weight?"

¶ 11 Johnson did not object.

¶ 12 During closing argument, the prosecutor read the statutory definition of "substantial step" and told the jury,

So I want you to think about what we talked about in jury selection when I was asking whether or not you could find me guilty for attempting to bring my coffee into the courtroom. We talked about the idea of all the steps that I took in order to get ready to bring coffee in. We talked about how I made it, put it in a cup, put that cup on the counter so I wouldn't forget it. We also talked about how, potentially, your testimony from a partner, my partner, saying that I would bring that coffee into the courtroom.

Those are all substantial steps. And like in this case, you can consider all of them towards whether or not I was guilty of that crime.

¶ 13   Johnson objected to the use of the analogy in closing argument, but the district court overruled the objection. Without discussing it further, the prosecutor turned to the substantial step evidence that had been presented at trial related to the attempted first degree murder charge.

1.   Standard of Review

¶ 14   When reviewing claims of prosecutorial misconduct, we determine whether the conduct was improper based on the totality of the circumstances. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). In doing so, we evaluate claims of improper argument in the

context of the argument as a whole and in light of the evidence before the jury. *People v. Conyac*, 2014 COA 8M, ¶ 132.

¶ 15 The parties disagree on the appropriate standard of review. Johnson, asserting that the hypothetical violates due process, submits that we should review this issue de novo, while the People assert that our review is for an abuse of discretion. We agree with the People. *See Wend*, 235 P.3d at 1097 ("A deferential standard of review applies, but the analysis remains subject to the maxim that 'the trial court is best positioned to evaluate whether any statements made by counsel affected the jury's verdict.'" (quoting *Domingo-Gomez v. People*, 125 P.3d 1043, 1049-50 (Colo. 2005))).

## 2. Analysis

¶ 16 Johnson contends that the prosecutor's analogy to the fictional crime of "attempt to bring coffee in the courtroom" to explain the concept of a "substantial step" lowered the prosecution's burden and misstated the law. We are not persuaded that the analogy was improper.

¶ 17 While our supreme court has repeatedly cautioned courts and prosecutors against using analogies to illustrate certain legal concepts, *see Tibbels v. People*, 2022 CO 1, ¶ 25 (addressing

6

courts); *see also People v. Vialpando*, 2022 CO 28, ¶ 41 (addressing prosecutors), not all analogies are improper, *see Vialpando*, ¶ 41; *see also People v. Sauser*, 2020 COA 174, ¶ 89 (noting that a prosecutor's use of an analogy, without more, does not require reversal). Indeed, case law dictates that prosecutors may properly employ rhetorical devices and engage in oratorical embellishment and metaphorical nuance. *See, e.g., People v. Samson*, 2012 COA 167, ¶ 31.

¶ 18     During voir dire, the prosecutor never referenced "substantial step" or referred to the elements required to establish attempt liability. Instead, the prosecutor's analogy was offered in the form of a series of questions, each time adding an additional fact to see if it would change the prospective jurors' view on whether the prosecutor had committed the fictional offense. Because of this, the jury was less likely to understand the analogy as an endorsement by the prosecutor of any particular definition of substantial step. *See id.* at ¶ 30 ("[B]ecause arguments delivered in the heat of trial are not always perfectly scripted, reviewing courts accord prosecutors the benefit of the doubt when their remarks are ambiguous or simply inartful.").

¶ 19     During closing argument, the prosecutor told the jurors that the steps she took — making the coffee, putting it in a cup, putting the cup on the counter, and telling her partner that she would bring the coffee into the courtroom — were "all substantial steps."  But before using the analogy, the prosecutor correctly explained the concept of substantial step to the jury.  And after using the analogy the prosecutor qualified her comments by telling the jurors that they "*could* consider" (but were not required to consider) these facts "towards whether or not [she] was guilty of that crime."

¶ 20     In light of these facts, we conclude that the prosecutor's analogy was not a misstatement of the law, and it did not lower the prosecution's burden.  Rather, the analogy was an effort to give context to the concept of a "substantial step" toward the commission of an offense, as required to establish attempt liability.  At best, the prosecutor's comments accurately conveyed that a substantial step requires more than mere preparation and can be satisfied when conduct strongly indicates that a person intends to commit the act in question.  *Cf. People v. Lehnert*, 163 P.3d 1111, 1116 (Colo. 2007) (holding evidence that the defendant possessed bomb-making materials was sufficient to support attempted murder

conviction even though bombs were not assembled and victims were not within striking range).  At worst, the prosecutor's comments were ambiguous (during voir dire) or inartful (during closing), but they were not improper.  *See Domingo-Gomez*, 125 P.3d at 1048.

¶ 21    Moreover, at no point did the district court lend credence to or endorse the prosecutor's analogy.  Instead, at the outset of the trial the court instructed the jury, "It's my job to decide what rules of law apply to this particular case.  You must follow the law as I explain it to you . . . ."  And in response to Johnson's objection to the analogy during the prosecutor's closing argument, the court instructed the jurors that "this is the argument of the prosecution."  The court also correctly instructed the jury on the concept of substantial step.  We presume the jury followed the court's instructions.  *See Vialpando*, ¶ 41; *see also People v. Carter*, 2015 COA 24M-2, ¶¶ 59-61 (holding that a district court's instructions can cure any prejudice from an improper analogy).

¶ 22    Further, the prosecutor's illustration did not resemble other analogies that Colorado appellate courts have cautioned prosecutors against using, such as a puzzle analogy.  *See Sauser*, ¶ 90.  It did not "(1) 'quantify the concept of reasonable doubt'; (2)

9

'inappropriately trivialize the state's burden'; (3) 'equate the burden of proof to an everyday choice'; or (4) 'use iconic images, which invite the jury to jump to a conclusion about a defendant's guilt.'" *Id.* (quoting *People v. Camarigg*, 2017 COA 115M, ¶¶ 44-47).

¶ 23    Taking these considerations together, we conclude that the prosecutor's illustration of substantial step did not lower the burden of proof or a misstate the law. Accordingly, the prosecution's use of the "coffee-in-the-courtroom" analogy did not constitute misconduct.

### B. The Elemental Jury Instruction

¶ 24    Johnson next contends that the district court reversibly erred by incorrectly instructing the jury on an element of second degree kidnapping. We agree.

¶ 25    During deliberations, the jury sent a question to the district court, which asked, "Regarding the charge of kidnapping, could 'one place to another' be within the confines of the apartment?" Over defense counsel's objection, the court instructed the jury:

> Jury Instruction Number 15 sets forth the elements for Second Degree Kidnapping. Those elements are as follows:

The elements of the crime of Second Degree Kidnapping are:

1. That the defendant

2. in the State of Colorado, at or about the date and place charged,

3. knowingly,

4. seized and carried any person from one place to another,

5. without her consent, and

6. without lawful justification.

As to element number 4, the District Attorney must prove beyond a reasonable doubt that the defendant (1) seized the victim and (2) carried the victim from one place to another. *"One place to another" could be within the confines of the apartment.*

(Emphasis added.)

### 1.    Standard of Review

¶ 26    We review for an abuse of discretion the district court's decision to provide the jury with additional written instructions in response to a question. *People v. Chase*, 2013 COA 27, ¶ 37.

¶ 27    The parties dispute whether we should review the alleged error for constitutional or nonconstitutional harmless error. Most instructional errors are subject to harmless error review. *People v.*

*Frye*, 2014 COA 141, ¶ 23. But the error alleged here is that the district court's instruction lowered the prosecution's burden of proof. And when an instructional error relieves the prosecution of its obligation to prove an element of the crime beyond a reasonable doubt, we apply a constitutional harmless error standard. *See Garcia v. People*, 2022 CO 6, ¶18; *see also People v. Sabell*, 2018 COA 85, ¶ 22 (concluding that a court commits constitutional error when it "erroneously instructs the jury in a manner that lessons the prosecution's burden of proof").

¶ 28    Thus, we will reverse a conviction unless the prosecution can prove that the error was harmless beyond a reasonable doubt. *See Garcia*, ¶ 18. An error is not harmless beyond a reasonable doubt if there is a reasonable possibility that the error might have contributed to the conviction. *Hagos v. People*, 2012 CO 63, ¶ 11.

### 2.    Analysis

¶ 29    When an instruction is needed to answer a jury question, the court should provide it unless:

> (1) the jurors can be adequately informed by directing their attention to some portion of the original instructions; (2) the request concerns matters not in evidence or does not pertain to the law of the case; or (3) the request would

> call upon the judge to express an opinion upon factual matters that the jury should determine.

*Copeland v. People*, 2 P.3d 1283, 1288 (Colo. 2000); *see also* ABA Standards for Criminal Justice 15-5.3 (3d ed. 1996). As one division of this court has observed, the American Bar Association has noted the "sensitive" nature of providing additional instructions because they "may have the effect, intended or not, of coercing a juror into abandoning his or her original position." *People v. Thornton*, 251 P.3d 1147, 1152 (Colo. App. 2010) (quoting ABA Standards for Criminal Justice 15-5.3 cmt.).

¶ 30 The jury's question did not reflect a fundamental misunderstanding of an element of the offense but rather uncertainty regarding how to apply the legal standard to the particular facts of the case. Specifically, the jury was struggling to apply an element of the offense of kidnapping ("seized and carried any person from one place to another") to the factual allegations, which occurred exclusively within an apartment. Thus, when the district court responded that "'[o]ne place to another' could be within the confines of the apartment" — and the jury heard no evidence of any conduct occurring outside of the apartment — the

court's response definitively answered the jury's question. And because the question called upon the court to express an opinion upon factual matters, it was an abuse of discretion for the court to answer in the way that it did. *Cf. Chase*, ¶ 43 ("[B]ecause the jury asked a question about how to apply the facts to an element of the offense, it was not an abuse of discretion for the trial court to simply reiterate the original instructions . . . ."); *see People v. Alexis*, 806 P.2d 929, 932 (Colo. 1991) (district court properly referred jury back to original instructions, when providing jury with additional information or instructions would have expressed an opinion on a factual matter that was properly determinable by the jury).

¶ 31     The People's reliance on *Leonardo v. People*, 728 P.2d 1252 (Colo. 1986), is unavailing. In *Leonardo,* the district court erred by referring the jury back to the original instruction when the jury misunderstood the applicable legal standard, which was not clearly defined in the other instructions. *See id.* at 1255-56. But here, the question from the jury did not relate to a misunderstanding of the law of the case but rather to a determination that required application of the facts of the case to an instruction — a

determination on which the district court must not express an opinion. *See Copeland*, 2 P.3d at 1288.

¶ 32    We are also unpersuaded by the People's argument that the district court's instruction did not tell the jury that an element of kidnapping was met because the instruction merely told the jury that kidnapping *could* be within the apartment. Because there was no evidence presented that *any* conduct occurred outside of the apartment, the court's response definitively answered the question for the jury.

¶ 33    Having concluded that the district court's instruction was improper, and because the parties agree that Johnson preserved his objection, we must reverse unless the People can demonstrate that the error was harmless beyond a reasonable doubt — that is, there is no reasonable possibility that the error contributed to the conviction. *See Hagos*, ¶ 11.

¶ 34    The People assert that the district court's instruction was both harmless and harmless beyond a reasonable doubt because even if the court had never provided the additional instruction (and instead referred the jury back to the instructions it had already given as requested by defense counsel), the jury would have reached the

15

same result.  We will not speculate about jury deliberations.  *See Castro v. People*, 2024 CO 56, ¶ 80; *see also People v. Oram*, 217 P.3d 883, 895 (Colo. App. 2009) ("We must also be careful not to inquire into or speculate about jury deliberations . . . .").  Instead, we conclude that because the court's instruction essentially told the jury that a contested element of the crime was met, thereby lowering the prosecution's burden of proving that element, the error was not harmless beyond a reasonable doubt.  *See People v. Garcia*, 113 P.3d 775, 784 (Colo. 2005) ("Because a defendant's constitutional right to due process is violated by an improper lessening of the prosecution's burden of proof, such error cannot be deemed harmless.").

¶ 35    Accordingly, we conclude that the district court abused its discretion when the jury's question called for, and the court offered, an opinion on factual matters.  Further, because the court's instruction lowered the prosecution's burden of proof, the error was not harmless beyond a reasonable doubt.  We therefore reverse the second degree kidnapping conviction.

## III.    Disposition

¶ 36    Johnson's second degree kidnapping conviction is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.  The judgment is otherwise affirmed.

JUDGE MOULTRIE and JUDGE BERGER concur.